## DEARMAN v. TRIMMIER.

1. The findings of fact by the Circuit Judge from testimony heard by him, and in part conflicting, sustained.

2. The distinction pointed out between the commercial rule that protects an innocent indorsee for value of a negotiable instrument before maturity, and the equity rule that protects a *bona fide* purchaser for valuable consideration without notice.

3. Where a party takes by indorsement from the payee a promissory note not due as collateral security for a past due debt, he is not affected by equities then existing between the maker and the payee.

4. And where such a note is secured by a mortgage, which also passed to the indorsee along with the note, the same doctrine would doubtless apply to the mortgage, so long as the note continued to be a subsisting and active security.

5. But after the note is barred by the statute of limitations and the mortgage remains as the only security capable of being enforced in law, the holder can no longer invoke the commercial rule that protected him as indorsee of the note, but must stand upon the equity rule governing purchasers for valuable consideration without notice. Under this rule the holder is not protected from existing equities, where the consideration of his purchase was a past due debt.

6. Where a creditor holds a note and a mortgage as securities for the same debt, and has lost his right of action on the note, he may still pursue his remedy on the mortgage, while it subsists; but in such case he must rely wholly upon the mortgage unaffected by any of the incidents which attached to the note.

7. A party who sells the land of another without authority is liable for the proceeds of such sale.

Only the result concurred in.

Before Hudson, J., Spartanburg, September, 1886.

The opinion fully states the case, but as only the result has been concurred in, it should be stated that in addition to the points considered in the opinion, the respondent earnestly contended that under the terms of the mortgage of Joplin to Trimmier, Joplin sold the mares as Trimmier's agent.

*Mr. R. K. Carson,* for appellant.

*Messrs. J. S. R. Thomson* and *D. E. Hydrick,* contra.

April 20, 1887.  The opinion of the court was delivered by

Mr. Justice McIver.  The facts of this case, so far as they are necessary to be stated for the purpose of determining the questions raised by this appeal, are as follows : one Thomas M. Joplin, being engaged in the business of buying and selling horses, borrowed money, for the purpose of enabling him to carry on his business, from the defendant, F. M. Trimmier.  On April 24, 1876, he executed a note to the defendant for the sum of $1,027, securing the payment thereof by a mortgage on a lot of horses, among which were the two bay mares hereinafter referred to.  One of the stipulations contained in this mortgage was that Joplin had agreed to sell the mortgaged animals and apply the proceeds of each sale to the payment of the said note as soon as the money is paid.  On May 4, 1876, Joplin sold the two bay mares above mentioned as included in the said mortgage to S. D. Dearman, the husband of the plaintiff, for the sum of ninety dollars each, on a credit of thirty and ninety days.

Joplin being unwilling to extend this credit to S. D. Dearman without security, two promissory notes were drawn up, one at thirty and the other at ninety days, signed by the plaintiff and the said S. D. Dearman, whereby they promised to pay to the order of Thomas M. Joplin the sums mentioned in each of said notes, one at thirty and the other at ninety days from date, with interest at one and a half per cent. per month; and if not paid at maturity, interest thereafter to be at the rate of five per cent. per month.  To secure the payment of these notes the plaintiff and

her husband executed a mortgage to said Joplin of certain real estate, viz., two lots in or near the city of Spartanburg, one containing fifteen acres, more or less, which was the separate property of the plaintiff, and the other containing two acres, more or less. All the papers necessary to effect these transactions were drawn up by the defendant, Trimmier, who then was and still is clerk of the court for Spartanburg County; but the notes and mortgage of the plaintiff and her husband were not executed in his presence, having been taken to the house of the plaintiff for that purpose. After they were executed, Joplin delivered them to the defendant, who retained possession of them.

When the first note fell due, S. D. Dearman went to Joplin to pay it, and was by him carried to the clerk's office, when the defendant produced the notes, and the amount of the first one was paid to Trimmier, or rather counted out on his table, when Joplin took ten dollars of it and left the balance with Trimmier. Soon after this, and before the second note fell due, S. D. Dearman returned to Joplin one of the mares, because she would not work as she was warranted to do. Joplin received her back and asked Dearman to try another animal in her place. To this Dearman acceded, but soon returned that animal also as a failure and Joplin received it. After this Joplin, on the demand of Dearman, refused to surrender the note given for the mare which had been returned. When the second note became payable, Trimmier demanded payment from S. D. Dearman, who refused upon the ground of failure of consideration and that the contract had been rescinded. Several times this demand was repeated, Trimmier calling Dearman's attention to the extravagant rate of interest which the note was bearing, but Dearman persistently refused payment, denying his liability on the ground stated. It does not appear, however, that any demand was ever made upon the plaintiff, or that Trimmier ever had any interview or communication with her upon the subject.

Matters were allowed to rest in this condition, without any further attempt to collect the note, until November, 1884, after any action on the note would have been barred by the statute of limitations, when the defendant, as assignee, by virtue of the power contained in the mortgage, advertised and sold the land

during the absence of the plaintiff and her husband in the State of Georgia, without any notice to them further than by the advertisement published in a newspaper in Spartanburg. At this sale, L. A. Mills became the purchaser at the sum of five hundred and fifty dollars, the note at that time, by the accumulation of interest, amounting to about six hundred dollars. On May 22, 1886, this action was commenced by the plaintiff for the purpose of requiring the defendant to cancel the note and mortgage and account to her for the proceeds of the sale of her property.

The case was heard by the Circuit Judge, upon the testimony delivered in open court, who found the general history of the transaction to be substantially as above stated; that the plaintiff was a surety and not the principal on the note, although she signed it first; that Trimmier was aware of the real nature of the transaction; that he took the notes of the Dearmans together with the mortgage as collateral security for the debt of Joplin to him; but that he had no notice of the failure of consideration as to the last note at the time the papers were transferred to him. Upon these facts he found as matter of law that while the transfer before maturity of a negotiable note, such as this was, for a valuable consideration, paid at the time without notice of subsisting equities between the original parties, would carry with it the mortgage given to secure the payment of such note, and the holder would be entitled to both note and mortgage free and discharged from such equities; and that, while a negotiable note, transferred before due, without notice of any equities between the original parties to it, "not for a valuable consideration given at the time, but in *payment* and *extinguishment* of an *antecedent* debt, * * if it be so taken in the usual course of business, it is free from the equities between the original parties," yet for the doctrine that "a mortgage transferred in payment of a pre-existing debt to a purchaser of a note it secures, before maturity and without notice, stands discharged of equitable defences between the original parties," the judge says he finds no authority. He, however, held that "a note and mortgage thus transferred only as *collateral security* for a debt * * is still affected with the equities between the original parties." This he bases upon the case of *Haynsworth* v. *Bischoff*, 6 *S. C.*, 159. Inasmuch, there-

fore, as the note and mortgage were transferred to Trimmier only as collateral security for the debt of Joplin, the mortgage in the hands of the defendant as assignee was subject to the defence of failure of consideration, which was fully made out. The Circuit Judge therefore held that the sale of the mortgaged premises was unauthorized, because there was no debt due under the mortgage, and consequently the defendant was accountable to the plaintiff for the full value of the premises, as evidenced by the price brought at the sale, which appeared to be fair. Judgment was accordingly rendered that the note and mortgage be cancelled, and that the defendant pay to the plaintiff the sum of five hundred and fifty dollars, with interest thereon from November 3, A. D. 1884, together with costs.

From this judgment defendant appeals upon the several grounds set out in the record. So far as these grounds impute error to the Circuit Judge in his findings of fact, it is only necessary to say that under the well settled rule they cannot be sustained. The testimony as to several of the issues of fact was manifestly conflicting, and there can be no doubt that the conclusions reached by the Circuit Judge are based upon testimony quite sufficient to support them.

We proceed, then, to inquire into the legal principles applicable to the facts as found by the Circuit Judge. In the outset of this inquiry, it may be as well to say that the well settled rule of law by which the holder of a negotiable note, who has acquired the same before maturity for a valuable consideration, without notice of any equity to which it might have been subject in the hands of the payee, cannot be affected by any such defence, is a different thing from the other equally well settled rule by which a purchaser for valuable consideration without notice may protect himself against some antecedent equity. The former is a rule of commercial law, and applies only to a particular class of property—negotiable instruments; while the latter may be applied to any kind of property. One is a rule of commercial law, while the other is a rule of equity; and the incidents of the two rules are not always the same. For convenience, therefore, in the further discussion of this case, we will designate one as the commercial and the other as the equity rule.

The commercial rule, as above stated, is universally conceded, but what shall constitute one a purchaser for valuable consideration of negotiable paper—whether he must actually pay the money or part with something else of value *at the time of the transfer*, or whether one who takes such paper in payment of an antecedent debt, or as collateral security for such debt, can be regarded as such a purchaser—has been the subject of some conflict of opinion. We think, however, that the decided weight of authority is in favor of the view expressed in *Story on Promissory Notes*, section 195, in the following language: "Every person is, in the sense of the rule, treated as a *bona fide* holder for value, not only when he has advanced money or other value for it, but when he has received it in payment of a precedent debt, or when he has a lien on it, or has taken it as collateral security for a precedent debt, or for future as well as for past advances." *Oates* v. *National Bank*, 100 *U. S.*, 239; *Railroad Company* v. *National Bank*, 102 *Id.*, 14, in which the authorities, both English and American, are elaborately reviewed by Mr. Justice Clifford in his separate opinion. And this view has been expressly recognized in this State in the case of *The Bank* v. *Chambers*, 11 *Rich.*, 657. So that the question may be regarded as settled here. That this view has not only the support of authority, but of reason as well, see the opinion of Mr. Justice Story in *Swift* v. *Tyson*, 16 *Peters*, 1, the reasoning of which has been repeatedly referred to with approval in subsequent cases, and seems to have been sufficient to induce Chancellor Kent to change the opinion previously expressed by him in *Bay* v. *Coddington* (5 *Johns. Ch.*, 54), as will appear from what is said by Mr. Justice Harlan in *Railroad Company* v. *National Bank, supra.*

From this, it follows that the fact that the note of the plaintiff was transferred to the defendant merely as collateral security for the debt due by Joplin, would not deprive the defendant of the right of claiming the protection accorded to a purchaser for valuable consideration under the commercial rule, so far as the note was concerned. In the case of *Haynsworth* v. *Bischoff* (6 *S. C.*, 159), the question arose, not under the commercial, but under the equity rule, and it was there held to be well settled that a person cannot invoke the protection of the equity rule, as a purchaser for

valuable consideration without notice, unless he has paid the purchase money *at the time of the purchase,* and that where the property in question was acquired in payment of an antecedent debt, still less where it was acquired as collateral security for such debt, he could not invoke the protection of the rule. *Williams* v. *Hollingsworth,* 1 *Strob. Eq.,* 103 ; *Zorn* v. *Railroad Company,* 5 *S. C.,* 90. We find here a very marked distinction between the operation of the two rules, and this distinction seems to have been lost sight of in the court below as well as in the argument here. So that if the defendant here was claiming his rights *under the note,* the case of *Haynsworth* v. *Bischoff* would not apply, and, so far as we can see, there would be nothing to prevent him from availing himself of the benefit of the commercial rule.

But the defendant, by the operation of the statute of limitations, had lost his right of action on the note before he undertook to enforce the payment of his debt through the mortgage. It is very true that the loss of his right of action on the note did not necessarily deprive him of the right to enforce the mortgage (*Nichols* v. *Briggs,* 18 *S. C.,* 473) ; but when he undertook to do so, whether he could still avail himself of the protection of the commercial rule as a purchaser for valuable consideration without notice, or whether he would not be compelled to stand simply upon the equity rule, is another question, and is, in fact, the turning point of this case. A mortgage is not a negotiable instrument—is not commercial paper, and therefore the commercial rule cannot be applied in a controversy as to the rights of a purchaser of such an instrument. Such a purchaser can only claim the more limited protection afforded by the equity rule ; and where, as in this case, the mortgage has been acquired merely as collateral security for an antecedent debt, the equity rule would afford no protection, while the commercial rule, if applicable, would. As a general proposition, this is not, and cannot be, denied.

But it is argued with much force, that inasmuch as the mortgage in this case was given to secure the payment of a negotiable note, and inasmuch as it is well settled that the transfer of the note operates as a transfer of the mortgage given to secure the payment of such note, the mortgage when so transferred, as well

as the note, are discharged from all the equities existing between the original parties.    By reference to 1 *Jones on Mortgages,* sections 834–841, it will be seen that upon this subject also there is a conflict of authority, though the weight of authority, says that distinguished author, is in favor of the view contended for by the appellant.    One of the principal cases relied on in support of this view is that of *Carpenter* v. *Longan* (16 *Wall.,* 271), affirmed in the subsequent case of *Kenicott* v. *Supervisors,* 16 *Wall.,* 452. It will be observed, however, that in the text-writer above cited, as well as in all the cases supporting this view, which we have been able to consult, the question has been considered upon the assumption that the holder of the note still had his right of action thereon, and we have not been able to find a single case where the question has been considered under the circumstances presented in the present case, to wit, where the holder has lost his right of action on the note and is compelled to rely on the mortgage only for the enforcement of his claim.

One of the principal arguments urged by Mr. Justice Swayne in support of the conclusion reached in *Carpenter* v. *Longan, supra,* was the strange anomaly which would result from a different doctrine, whereby the holder of the note could, in an action at law on the note, recover the whole amount, whereas if he proceeded to foreclose his mortgage, he might be unable to recover anything, by reason of subsisting equities between the original parties.    His language is :    "A different doctrine would involve strange anomalies.    The assignee might file his bill and the court dismiss it.    He could then sue at law, recover judgment, and sell the mortgaged premises under execution.    It is not pretended that equity would interpose against him.    So if the aid of equity were properly invoked to give effect to the lien of the judgment upon the same premises for the full amount, it could not be refused.    Surely, such an excrescence ought not to be permitted to disfigure any system of enlightened jurisprudence.    It is the policy of the law to avoid circuity of action, and parties ought not to be driven from one forum to obtain a remedy which cannot be denied in another."

Now, it is very obvious that, in a case like the present, no such anomaly as that so strongly deprecated in the foregoing

33

quotation, could ever be presented, for the holder of the note having lost his right of action thereon could never obtain judgment at law at all, and he would be compelled to rely solely on the mortgage. The learned justice, in the case from which the foregoing quotation has been made, after admitting that there is considerable discrepancy in the authorities upon the question under consideration, and after referring to and commenting on the case of *Baily* v. *Smith* (14 *Ohio St.*, 396), as "a case marked by great ability and fulness of research," in which a different view was taken, proceeds to say: "The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive and decrees accordingly." Again he says: "All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action where no such relation of dependence exists. *Accessorium non ducit, sequitur principale.*"

From all this it is quite manifest that the doctrine established by the case from which we have made such liberal quotations (it being regarded as a leading case upon the subject), rests upon the assumption that the right of action on the note still subsists, that it is still the principal and the mortgage a mere accessory; for if it were otherwise, and the note had lost its vitality as a cause of action, or rather as the foundation of the action, then the amount due *on the note* could not be ascertained in the fore-

closure proceeding, and the mortgage, *standing alone*, would be the chose in action, which is sought to be enforced.

Now, while the doctrine established by the case of *Carpenter* v. *Longan*, may, and doubtless would, be recognized here in a case were the right of action on the note still subsists, the question remains as to whether this doctrine is applicable to a case like the one now under consideration, where the creditor has lost his right of action on the note, and is compelled to rely solely on the mortgage for the enforcement of his claim. As is stated in a previous part of this opinion, it has been held in this State that where a note secured by a mortgage is barred by the statute of limitations, the creditor may, notwithstanding he has lost his right of action on the note, still proceed to enforce his mortgage (*Nichols* v. *Briggs*, 18 *S. C.*, 473) ; and that even where the note has been rendered void by a fraudulent alteration of its terms, a mortgage given to secure the payment of the debt represented by such note may, nevertheless, be enforced. *Plyler* v. *Elliott*, 19 *S. C.*, 257.

These cases, while recognizing the relationship between the note and the mortgage—that the former is the principal and the latter accessory—upon which idea the cases of *Carpenter* v. *Longan* and others of that class mainly rest, are based upon the idea that both the note and the mortgage are mere securities for the debt, and as a creditor may take as many different kinds of security for his debt as he may be able to obtain, the fact that he may have lost the right to enforce one of the securities does not necessarily defeat his right to enforce the other. A creditor holding two securities for the same debt has the right to enforce either, or both, as long as the debt remains unpaid. He is not bound to proceed on both, and he may elect which of the two securities he will enforce. When, therefore, a creditor holds both a note and mortgage to secure the payment of his debt, and he has lost his right of action on the note by reason of an alteration in its terms, or by reason of the bar of the statute of limitations, there is no reason why he may not proceed to enforce his other security—the mortgage. But when he does so he must rely alone upon the mortgage, and can claim no benefit arising from its relationship to the note, upon which he has lost all right

to proceed. His mortgage then stands alone, for the note having lost all legal vitality, it can no longer impart any of its incidents to the mortgage, which must be treated as a distinct and independent security for the debt, possessed of only such qualities as are inherent in its nature, unaided by any incidents which might have been imparted to it by the note previous to its legal extinction. It seems to us that this idea of the absolute severance of all relationship between the note and the mortgage is essential to the idea upon which the two cases last cited rest.

We are of opinion, therefore, that the doctrine that the transfer of a negotiable note, secured by a mortgage for valuable consideration before maturity without notice, carries with it the mortgage impressed with the qualities incident to the note, under the commercial rule, only applies where the note is capable of being used, and is used, in the proceeding to foreclose the mortgage; but that where the note has lost its legal vitality, and all right of action upon it is gone, and the only recourse is upon the mortgage standing alone, the doctrine does not apply. In such a case the mortgage must be regarded, according to its inherent nature, as unnegotiable paper, and hence a purchaser of it cannot invoke the protection of the commercial paper, but must rely solely upon the equity rule. Now, in this case, as we have seen, the defendant cannot invoke the protection even of the equity rule, because he paid no money at the time he acquired the mortgage, but took it simply as collateral security for an antecedent debt, and therefore it was in his hands subject to all the defences to which it would have been in the hands of the original mortgagee. This being so, and the proof of an entire failure of consideration being abundant, it follows that the sale by the defendant of the mortgaged premises was altogether unauthorized, and he is therefore liable to the plaintiff for the proceeds of such sale.

While, therefore, we concur in the ultimate conclusion reached by the Circuit Judge, for the reasons hereinbefore stated, we are not prepared to endorse all of the grounds, as we understand them, upon which he bases his judgment; and we desire to add, in justice to the Circuit Judge, that owing to misprints in the "Case," as presented here, it is quite possible that we may not have fully apprehended the judge's views, and, therefore, may not

have fairly represented them, which, of course, we have endeavored to do, as well as the obscurity arising from misprinting in the Circuit decree would permit.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON and MR. JUSTICE McGOWAN concurred in the result.