INTERSTATE B. & L. ASSOCIATION v. McCARTHA.

1. BOND—RECORDED MORTGAGE—ATTORNEY'S FEES.—The record of a mortgage is constructive notice of its contents to all subsequent purchasers of the mortgaged land; but a mortgage duly recorded, setting forth particulars of the bond secured thereby, and specially referring to it as a "part hereof," is not notice of a provision in the bond requiring the payment of attorney's fees in case of collection of the bond by suit, the mortgage itself containing no such stipulation, but providing for such fees only in case of a sale by the mortgagee under the power therein contained.   Therefore, no attorney's fees can be demanded out of the proceeds of a foreclosure sale as against a subsequent purchaser, who had no other notice than that which the record supplied.

2. PER McIVER, C. J., IBID.—IBID.—IBID.—A provision in a bond providing for attorney's fees in case of collection by suit in a clause relating, also, to a waiver of homestead and exemption in this and other property, together with the absence of such a provision in the mortgage, *would seem* to apply only to a suit at law on the bond, and not to an action for foreclosure of the mortgage.

Before FRASER, J., Richland, April, 1894.

Action by the Interstate Building and Loan Association against J. P. McCartha and the Loan and Exchange Bank of

South Carolina, to foreclose a mortgage of J. P. McCartha, dated November 23, 1891. The defendant bank offered judgment and decree of sale for the debt and interest, but denied liability for the fees of plaintiff's attorneys, as claimed in the complaint. The Circuit Judge held with the bank, and the plaintiff appealed.

*Messrs. Robertson, Moore & Thomson,* for appellant.

*Mr. Allen J. Green,* contra.

January 9, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This was an action to foreclose a mortgage of real estate, given by the defendant McCartha to the plaintiff to secure the payment of a bond, to which the defendant bank has been made a party as a purchaser of the mortgaged premises subsequent to the execution of the mortgage. Copies of the bond and mortgage are set out in the "Case," and should be incorporated in the report of the case. It is sufficient to say here that, amongst numerous other stipulations in the bond, it contains in the last paragraph thereof the following provision: "I waive, relinquish, and renounce for myself and family all claim, right, and benefit of any homestead or exemption under the laws of the United States or of this State in any property which I now or may hereafter own, in favor of the payment of this obligation, and for such an amount as may be found to be due under the same; and I further agree to pay the additional sum of ten per cent. on the amount due, as counsel fees, should this bond be collected by suit." The mortgage recites the date, the penalty, and the condition of the bond, and invests the mortgagee with power to sell the mortgaged premises upon default in the performance of the conditions and stipulations contained in the bond, which "is hereby referred to and made part hereof," and out of the proceeds of such sale "pay all expenses of the same, including all attorney's fees, then whatever sum may be due said association, and the balance, if any, pay over to me." But the mortgage did not contain any stipulation for the payment of ten per cent. counsel fees, in case the bond should be collected by suit.

This mortgage having been duly recorded, the defendant bank very properly conceded the liability of the mortgaged premises for the amount due and collectable under the terms of the mortgage, but denied that the ten per cent. counsel fees for foreclosure by proceedings in court constituted any proper charge on the mortgaged premises in its hands as a subsequent purchaser for valuable consideration, without notice of any such charge. It was conceded that the defendant bank had no notice of this alleged claim or charge upon the mortgaged premises for ten per cent. counsel fees, except that which it is claimed arose from the record of the mortgage. So that the only question presented to the Circuit Judge was whether the land covered by plaintiff's mortgage was liable, in the hands of the defendant bank as a subsequent *bona fide* purchaser, for these counsel fees; and he having held that it was not, the plaintiff appeals upon the several grounds set out in the record, which need not be repeated here, as they substantially make the single question whether the Circuit Judge erred in holding that the mortgaged premises in the hands of the defendant bank were not liable for the ten per cent. counsel fees.

It seems to us that the object of the registry laws was to afford persons proposing to purchase real estate a ready and easy means of ascertaining whether the property proposed to be purchased is encumbered, or is subject to some claim superior to that of the proposed vendor. Hence it has long been well settled that, whether these means thus provided by law for the purpose indicated, are resorted to or not, the record of a deed or mortgage shall operate as constructive notice to all the world of everything contained in such record. In this case, however, it is insisted that the record of the mortgage operated as constructive notice not only of what was contained in the mortgage, as it was spread upon the record, but also of what was contained in the bond which was not spread upon the record. In other words, the proposition is that the doctrine of constructive notice arising from the record of a paper required to be recorded must be so extended as to affect a purchaser with notice of whatever would appear in any paper referred to in the registry of the recorded instrument, thus

making it obligatory upon the inquirer, in addition to searching the records of the proper office, also to extend his inquiries into the contents of papers not to be found in the place appointed by the law as the source of information. Such an extension of the doctrine of constructive notice would materially hamper the transfer of property, and work material injury to the business interests of the country.

It not unfrequently happens that a single mortgage is given to secure the payment of several bonds or notes, instances of which may be found in our own judicial records (*Lynch* v. *Hancock*, 14 S. C., 66, and *Anderson* v. *Pilgram*, 30 *Id.*, 499); and where these bonds or notes have passed into the hands of several different persons, as often is the case, if a purchaser who, though he has examined the record of the mortgage, should be compelled to examine into the terms contained in each one of the several bonds and notes before he could safely buy, it would very seriously interfere with the ready transfer of property. Take this very case as an illustration; here the purchaser, upon examining the record of the mortgage, found that it was given to secure the performance of an obligation, the terms and conditions of which were set out with unusual minuteness and particularity, amongst which was a provision for the payment of counsel fees in an event which did not occur, but which contained no hint that the mortgaged premises were to be subject to the payment of ten per cent. counsel fees in the event which did occur. It seems to us that it would be a hard and unreasonable doctrine to hold that the purchasers should be affected with constructive notice of a fact which only appeared in the bond, which may or may not have been in the hands of a foreign corporation, whose place of business was in another State. Indeed, the great particularity with which the terms and conditions of the bond were set forth in the mortgage, and the special mention of the provision for the payment of counsel fees, in an event which did not occur, and the omission of any such provision in the event which did occur, was well calculated to mislead a purchaser, and induce him to pay more for the property than he would otherwise have done.

These views are well supported by authority. In 2 Pom. Eq.

Jur., § 654, it is said: "By the policy of the recording acts such a party [alluding to a subsequent purchaser] is called upon to search the records, and he has a right to rely upon what he finds there entered as a true and complete transcript of any and every instrument affecting the title to the lands with respect to which he is dealing. A record can only be a constructive notice, at most, of whatever is contained within itself. Finally, the record will not be a notice, unless it and the original instrument of which it is a copy, correctly and sufficiently describe the premises which are to be affected, and correctly and sufficiently state all the other provisions which are material to the rights and interests of subsequent parties."

In the case of *Frost* · v. *Beekman*, 1 Johns. Ch., 288, it was held that the registry of a mortgage given to secure the payment of three thousand dollars, but, by a mistake of the recording officer, registered as a mortgage to secure the payment of three hundred dollars, is notice to a subsequent *bona fide* purchaser to the extent only of the sum expressed in the registry. In delivering the opinion of the court, Chancellor Kent used the following language: "The true construction of the act appears to be that the registry is notice of the contents of it, and no more, and that the purchaser is not to be charged with notice of the contents of the mortgage any further than they may be contained in the registry.   \*   \*   \*   The act, in providing that all persons might have recourse to the registry, intended *that* as the correct and sufficient source of information; and it would be a doctrine productive of immense mischief to oblige the purchaser to look, at his peril, to the contents of every mortgage, and to be bound by them, when different from the contents as declared in the registry. The registry might prove only a snare to the purchaser, and no person could be safe in his purchase, without hunting out and inspecting the original mortgage, a task of great toil and difficulty." Now, if the purchaser is not bound to look into the original mortgage, how much less is he bound to look into the contents of the bond which the mortgage is intended to secure. It is true, that the case just cited was subsequently reversed upon *another point*, by the Court of Errors in *Beekman* v. *Frost*, 18 Johns., 544,

but no disapproval of the views of Chancellor Kent, upon the point for which we have cited the case, was expressed.

In *Gilchrist* v. *Gough*, 63 Ind., 576 (30 Am. Rep., 250), a mortgage given to secure the payment of five thousand dollars was, by a mistake of the recording officer, recorded as a mortgage to secure the payment of five hundred dollars, and it was held that it operated as constructive notice only to the amount mentioned in the record; and at page 257 the court cites quite a number of cases, beginning with *Frost* v. *Beekman, supra,* in support of its conclusion. In that case it appears that in the index book the mortgage was mentioned as one for the sum of five thousand dollars, and this, it was contended, was sufficient to put the subsequent mortgagee upon inquiry, but the court held otherwise; for while the statute did require an index book to be kept, in which certain items should be noted, it did not require the amount of the mortgage to be noted, and hence its entry was not even such notice as would put a party upon inquiry.

We have no case in this State, so far as we are informed, which decides the point we have been considering. The nearest approach to it is the case of *Kennedy* v. *Boykin*, 35 S. C., 61. In that case one of the questions involved was as to the respective rights of two mortgagees, Witte Bros. holding the senior mortgage, and Armstrong the junior. Both mortgages were duly recorded, but in the record of the Witte mortgage, by a mistake of the recording officer, it appeared to be a mortgage for 200 acres, *more or less,* though the metes and bounds of the land were correctly set forth, while the number of acres should have been for 2,000, *more or less,* and the question was as to the effect of *such mistake*—whether the lien of the Witte mortgage could be confined to the number of acres set forth in the record. Upon that question the court expressed itself as follows: "The question is not as to the effect which *any mistake* in the record of a mortgage may have—as, for example, a mistake in stating the amount of the debt secured by the mortgage, in the record as $200, when in the original it is $2,000, and hence such a question does not arise in this case, and will not, therefore, be considered. Confining ourselves to the ques-

tion presented in the record, we think it is clear that a mere mistake in the record of a mortgage—as to the number of acres covered by it, especially when the number of acres there stated, as in this case, is accompanied by the words '*more or less,*' cannot possibly have the effect claimed by the appellant Armstrong. The addition of those words shows very plainly that the number of acres stated is a very unimportant, and, in most cases, wholly immaterial element in the description of the land intended to be conveyed or effected by the lien of a mortgage." The court then proceeded to cite several cases in which it had been held that the number of acres, with the superadded words "*more or less,*" had always been regarded as a very immaterial element in the description of land. It is apparent, therefore, that the court in that case carefully guarded itself against any inference as to what its opinion would be where there was a material mistake in the record.

The case of *Montague* v. *Stelts*, 37 S. C., 200, cited by counsel for appellant, is not in point, for the reason that there the rights of subsequent purchasers were not involved—the question being between the original parties to the mortgage—and in such a case the mortgagor would be held to have actual notice of the terms of the mortgage and of the obligations which it was given to secure, even if the mortgage had not been recorded at all. *Fowke* v. *Woodward*, Speer Eq., 233.

Counsel for respondent has undertaken to sustain the judgment below upon a ground which, so far as appears in the "Case," was not taken in the Circuit Court, and was not considered or passed upon by the Circuit Judge; and as the required notice does not appear to have been given, the point thus raised is not properly before us. But as counsel for appellant, in his argument in reply, has argued the point, we will, without resting our judgment upon it, indicate briefly our views. That position is thus stated in the argument of counsel for respondent: "That foreclosure in court is not the 'collection of the bond by suit' provided for in the bond." We do not understand that this position is based upon the proposition that a proceeding for the foreclosure of a mortgage of real estate cannot properly be regarded as a suit for the col-

lection of the money due on the bond which the mortgage was given to secure, as seems to be assumed by counsel for appellant in his argument in reply, for that such a proposition is untenable is, we think, shown by the case of *Branyan* v. *Kay,* 33 S. C., 283, cited by appellant's counsel. But, as we understand it, the argument is that the connection in which the provision for the payment of ten per cent. counsel fees, as well as the omission of any such provision from the mortgage, shows that it was not the intention of the parties that these counsel fees should be exacted for any proceeding to enforce the mortgage, but only in case it became necessary to sue on the bond in an ordinary action at law.

We confess that there is much reason in this view. The fact that this provision is found only in the last paragraph of the bond, in connection with the stipulation for the waiver of any claim of homestead or exemption "in any property which I now or *may hereafter own,*" is a strong indication that the parties intended that this provision for the payment of ten per cent. counsel fees should apply only in a case where the obligee of the bond should find it necessary to enforce payment of the same out of property in which the obligor could claim a homestead or other exemption, not to a proceeding to foreclose the mortgage, against which no such claim of homestead or exemption could be made. This coupled with the further fact that while the mortgage does contain a stipulation for the payment of the expenses of the sale, including counsel fees, in case the mortgagee should undertake to enforce payment of the mortgage debt by exercising the power of sale conferred by the mortgage, and altogether omits the provision for the payment of counsel fees in case the mortgagee undertook to enforce payment by proceedings for foreclosure in court, lends no little force to the view contended for by counsel for respondent. But, as we have said, for the reason above indicated, we are not disposed to rest our judgment upon this view; we need not pursue the suject further.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

The other justices concurred in the result, saying: We concur in the result. The mortgage purports to recite the terms of the bond, and does not make mention of the attorney's fees of ten per cent. Persons consulting the records had a right to presume that the bond was correctly set forth in the mortgage. We do not, therefore, think that it furnished evidence of such facts as required those consulting the records to make further inquiry.