### EX PARTE POWELL.

1. INTEREST.—A MORTGAGE executed contemporaneously with a bond to secure its payment may be referred to to ascertain the rate of interest as to which the bond is silent in controversy between the payee of the bond and one who has assumed payment by pledge of collateral. *Dearman* v. *Trimmier*, 26 S. C., 506; *Assn.* v. *McCartha*, 43 S. C., 75, and *Gunter* v. *Addy*, 58 S. C., 186, *distinguished from this case.*

2. COLLATERAL SECURITY—ASSIGNMENT.—A pledgor of collateral security for valuable consideration to secure the payment of three separate debts of another upon payment by pledgor of the two first, cannot require pledgee to surrender amount of collateral equal to amount paid on the two debts and apply balance to payment of third debt, but pledgee may apply all collateral security to the third debt. The contract of assignment in this case held not to give the pledgor the right to make this demand.

Before PURDY, J., February 14, 1905, and J. P. CAREY, special Judge, August, 1905, Richland. Modified.

*Ex parte* Eliza J. Powell, *in re* G. W. Fetner, against J. W. Powell, T. G. Patrick *et al.* From Circuit decrees, petitioner and defendant Patrick appeal.

*Messrs. Lyles & McMahan* and *Jno. T. Duncan*, for petitioner. The former cite: *Debt evidenced by bond being secured, its terms must be looked to to settle rate of interest:* 26 S. C., 506; 43 S. C., 75; 58 S. C., 186.

*Messrs. Weston & Aycock*, for defendant Patrick, cite: *Mortgage securing bond may be referred to here to fix rate*

13—74

*of .interest:* Jones on Mtg., sec. 71; 18 S. C., 73, 145, 600;
14 S. C., 341; 22 S. C., 279; 9 S. C., 344; 20 S. C., 46;
17 S. C., 1. *Pledgor cannot retake securities before all debts
secured are paid in full:* 18 Ency., 1 ed., 589, 601; 22 Ency.,
2 ed., 882; Brandt on Sur., secs. 261, 262, 265, 266; Jones
on Pledges, secs. 540, 541, 356; Fell on Sur., 542; Pcm.
Eq. Jur., sec. 1419.


April 16, 1906.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  The appeal in this case has two
branches.  One is the appeal of T. G. Patrick from the de-
cree of Judge Purdy, dated February 14, 1905, which in-
volves the question as to the correct rate of interest for which
the petitioner, Eliza J. Powell, is bound under her assign-
ment to T. G. Patrick of a judgment as collateral.

The material facts relevant to this controversy are as
follows: On November 29, 1888, defendant J. W.
Powell executed to defendant T. G. Patrick his bond in the
penal sum of $4,000, conditioned for the full sum of $2,000,
payable January 1, 1890, "with interest from date, payable
annually, until the whole debt and interest be paid in full."
On same day Powell executed to Patrick a mortgage pur-
porting to be given to secure a certain bond, "bearing date
the 29th day of November, 1888, conditioned for the pay-
ment of the full and just sum of two thousand ($2.000)
dollars payable January 1, 1890, with ten per cent. interest
from date payable annually until the whole debt and interest
is paid in full."  There was no evidence that more than
one bond was executed between the parties of that date and
amount, and there is no doubt that the bond referred to in
the mortgage was the bond as to which the question of
interest has arisen.  The instrument under which the col-
lateral was assigned by Mrs. Powell to T. G. Patrick is as
follows, the third paragraph being relevant to the particular
question in hand:

"State of South Carolina, County of Richland.

*"In the Court of Common Pleas.*

"G. W.. Fetner, Plaintiff, *v.* J. W. Powell, Eliza J Powell, Jesse B. Symmers, Eliza J. Powell, as Trustee, and Thomas G. Patrick, Defendants.

"For value received, I hereby assign, transfer and set over to Thomas G. Patrick all my individual right, title and interest in the decree of foreclosure in the above entitled action, such interest having been derived under and by virtue of a certain mortgage executed to me by the said J. W. Powell, and bearing date the——day of——18—, and more fully described in the said decree.   This assignment is made by me to the said T. G. Patrick to be held by him as collateral security for the following uses and purposes, that is to say:

"I. For the payment of a certain note this day executed by the said J. W. Powell and indorsed by me to the said Thomas G. Patrick for the sum of six hundred and ninety-seven and 37-100 dollars—the said note to become due and payable on or before the first day of December, 1898.

"II. As collateral security for the payment of any other sum or sums of money which he may thereafter advance in the payment of the interest upon a certain mortgage executed by the said J. W. Powell to Jessie B. Symmers—said mortgage bearing date the —— day of ——— 189—, and being more fully referred to in the above entitled proceedings.

"III. And after the payment of the said note above referred to, as further additional collateral security for the payment of a certain bond executed by the said J. W. Powell to Thomas G. Patrick originally for the sum of two thousand dollars and secured by a certain mortgage upon a certain real estate in Fairfield County—said mortgage bearing date the 29th day of November, 1888, and said mortgage being recorded in the office of the R. M. C. of Fairfield County in mortgage book 'H,' page 188, upon which said bond there is now due and owing the sum of ———.

"Given under my hand and seal, this the 15th day of November, A. D. 1897.                    Eliza Powell (L. S.)

"Signed, sealed and delivered in the presence of M. H. Clayton, S. W. Jackson."

Judge Purdy held that the assignment secured the debt as described in the bond above, and, no rate of interest being therein specified, the rate fixed by law would be seven per cent., his reasoning being that the bond was a complete contract in itself, without ambiguity, and needed no reference to the mortgage to make it plain, that the mortgage is a mere incident of the debt described in the bond, is no part of the bond and does not modify the bond, but is a separate and distinct evidence of a debt, and that one who secures the payment of the bond cannot be held for the debt as evidenced by the mortgage—citing *Dearman* v. *Trimmier*, 26 S. C., 506, 2 S. E., 501; *Building and Loan Association* v. *McCartha*, 43 S. C., 75, 20 S. E., 807; *Gunter* v. *Addy*, 58 S. C., 186, 36 S. E., 553.

The case of *Dearman* v. *Trimmier, supra,* merely decided that where a creditor holds a note and mortgage and has lost his right of action on the note, he may pursue his remedy on the mortgage, but must rely wholly upon the mortgage standing alone unaffected by any of the incidents attached to the note. In such a case the "mortgage stands alone, for the note having lost all legal vitality it can no longer impart any of its incidents to the mortgage, which must be treated as a distinct and independent security possessed of only such qualities as are inherent in its nature, unaided by any incidents which might have been imparted to it by the note previous to its legal extinction." We do not think this case is an authority for holding that a Court cannot look to both the bond and mortgage having legal vitality and evidencing the same debt, one being silent as to the rate of interest, and the other speaking definitely on that point, to ascertain the interest which the bond debt bears. The case of *Association* v. *McCartha, supra,* merely holds that the record of a mort-

gage containing no reference to attorneys' fees provided for in the bond which the mortgage secured is not notice · that such fees are secured by the mortgage to a subsequent purchaser of the mortgaged premises having no other notice than that which the mortgage supplied. In the case of *Gunter* v. *Addy, supra,* the Court held that the insertion, without fraudulent intent, in a mortgage after execution and record and after a junior mortgage, of words relating to interest, is not prejudicial to the junior mortgage where, in foreclosure of the senior mortgage, interest is only allowed according to the terms of the mortgage as recorded.

These two last mentioned cases relate to the question of notice to subsequent purchasers or encumbrancers and can not apply to this case, which involves no such circumstance. On the contrary, by the terms of the agreement it is apparent that Mrs. Powell had full information that the debt secured by the bond was also secured by the mortgage and that said debt bore interest at ten per cent. as described in the mortgage. It cannot be doubted that if the question were presented between J. W. Powll, debtor, and T. G. Patrick, creditor, in a suit to foreclose the bond and mortgage, the Court would be compelled to hold that the debt bore ten per cent. annual interest. We cannot see how a different construction can be put upon a contract in behalf of Mrs. Powell, the pledgor of collaterals to secure the same bond debt and interest. *Pelzer, Rogers & Co.* v. *Steadman,* 22 S. C., 279, holds that a written instrument cannot be construed one way as against the principal debtor and another way as against the surety. Mrs. Powell, however, is not to be regarded as a surety, for in the opinion of this Court in the former appeal, 68 S. C., 324, 326, 47 S. E., 440, the Court said: "Mrs. Powell does not occupy the position of surety, but of one who has voluntarily assumed her present relation to Patrick for full value, and she can have no higher equity against Patrick than J. W. Powell had * * *."

The bond and mortgage were contemporaneously executed and relate to the same matter and both may be looked to in

order to ascertain the intention of the parties as to the rate of interest. Since at that time it was lawful to stipulate for the higher rate of interest, our conclusion is that Judge Purdy was in error in this matter and that the rate of interest must be calculated at ten per cent. from November 29th, 1888, payable annually, in accordance with the conclusion of the master in his report before Judge Purdy, dated December 22, 1904.

In his decree Judge Purdy required the master to reform his report, by calculating the said interest at seven per cent., and in certain other particulars not now in issue, and also required that he make further report with other necessary testimony as to the two items of $630.55 and $535.17 claimed as credits by Mrs. Powell, for future determination. The master made his report accordingly, which was dated April 22, 1905. Judge Carey in a brief decree dated August 7, 1905, overruled the exceptions of Mrs. Eliza J. Powell and confirmed the master's report and directed the master to apply the proceeds of the judgment assigned by Mrs. Eliza J. Powell to T. G. Patrick on November 15, 1897, to the payment of the debt mentioned and secured by paragraph III. of said assignment.

Both parties, Mr. Patrick and Mrs. Powell, appeal from this decree. Patrick's exceptions present the question as to interest, which has already been considered. The master having made his report in conformity with the order of Judge Purdy as to the matter of interest, Judge Carey having no power to review the order of Judge Purdy, merely affirmed the report of the master without referring to the question of interest. But in order that there be no confusion with reference to this matter, we modify Judge Carey's decree in so far as it might be construed to affirm the calculation of interest at the rate of seven per cent., as last reported by the master.

The second branch of the appeal arises in the exceptions of Mrs. Powell to the decree of Judge Carey.

The judgment rendered November 13, 1897, in favor of

Mrs. Powell against J. W. Powell *et al.* was for $2,-700.54, exclusive of attorney's fees. By reference to the instrument set out above in full it will appear that this judgment was assigned by Mrs. Powell to T. G. Patrick to secure three items:

Item 1. Note by J. W. Powell to Patrick, indorsed by Mrs. Powell, for $697.37. It appears that J. W. Powell was indebted to G. W. Fetner on a note for $500, dated March 1, 1894, and that as collateral to this note Mrs. Powell had assigned to Fetner a note and mortgage given by J. W. Powell to her, dated May 15, 1891, for $1,760. In May, 1897, Fetner brought suit to foreclose this mortgage and on November 13, 1897, recovered judgment. Two days thereafter J. W. Powell applied to Patrick for a loan of $697.37 for the purpose of taking up the Fetner debt, interest and costs. Patrick advanced the money, taking the note referred to above as item 1. Patrick became owner of the Fetner judgment and the master found that Mrs. Powell on July 8, 1892, paid him as master $630.55 in payment of the Fetner judgment and that this sum was paid over by him to Patrick as owner of the Fetner judgment. The master further found that when Mrs. Powell paid off the Fetner judgment, the Powell note to Patrick (item 1) became satisfied, being the same debt.

Item 2. The interest on the Symmers bond and mortgage. It appears that J. W. Powell executed to Jessie B. Symmers in February, 1889, a bond in the full sum of $1,000, secured by a mortgage of certain land, being part of the land covered by a mortgage assigned to Fetner as above stated. After the execution of the Symmers mortgage and before the execution of the Eliza J. Powell mortgage assigned to Fetner, Patrick purchased a half interest in the 91½ acre tract and became a co-tenant with J. W. Powell in said lands. In the said case of *Fetner* v. *Powell et al.*, this Symmers mortgage was foreclosed and Patrick became the owner of the judgment thereon. This mortgage was a first lien on the land. The master found that Mrs. Powell paid to him

as master the amount due on the Symmers judgment and that the same was paid by him to Patrick as owner thereof, and that the interest paid by her on the Symmers judgment was $377.12 and not $533.17, as contended by counsel for Mrs. Powell.

Item 3. The bond and mortgage of J. W. Powell to Patrick, designated as the Fairfield bond and mortgage, upon which the master found there was due on December 22, 1904, the sum of $4,268.25.

The defendant Patrick was proceeding to have the land embraced in the mortgages sold by the master under the decree in said case of *Fetner* v. *J. W. Powell et al.*, when Mrs. Powell began this proceeding to enjoin the sale. The motion for injunction resulted in a consent order enjoining the sale and the payment into Court of the funds mentioned in the master's report for the purposes stated.

Now the main contention in behalf of Mrs. Powell is that the payment made by Mrs. Powell under this consent order in discharge of items 1 and 2 must be deducted from the whole amount that Patrick is to receive out of her judgment assigned to him and that only the balance thereof can be applied to the Fairfield bond and mortgage, item 3.

We agree with the Circuit Judge that the contention is not well founded. The position of Mrs. Powell with reference to the collateral securities is not that of a mere surety, for it appears that a part of the consideration of her assignment to Patrick was the transfer by Patrick to her of a chattel mortgage held by Patrick against the stock of goods belonging to J. W. Powell. Her payments of the Fetner and Symmers judgments, items 1 and 2, under the consent order were volunary payments. The Symmers mortgage constituted the first lien on the real estate, the mortgage assigned to Fetner the second lien, and the mortgage to Eliza J. Powell, trustee, the third lien, hence the payments made by her in discharge of the Symmers and Fetner liens operated to the benefit of all those interested in the third lien, which Mrs. Powell had for value pledged to Patrick.

The pledgor is entitled to a redelivery of the collateral securities upon payment of the principal debt or a tender thereof, but so long as any portion of the principal debt is unpaid the pledgee has the right to retain and enforce the collateral securities to the extent necessary to discharge the principal debt. Colbroke Collateral Securities, secs. 129, 448; 22 Ency. Law, 2 ed., 876, 882. In the absence of a contract permitting it, we know of no rule which allows the pledgor of securities to demand return of any part of the collaterals upon payment of a part of the principal debt. In this case no payment whatever has been made upon the third item of the pledge agreement, the Fairfield bond and mortgage.

We do not think that it is a proper construction of the assignment to say that the words in the third paragraph, "And after the payment of the said note, etc.," mean that the judgment assigned is only collateral to the Fairfield bond and mortgage after deducting from the judgment an amount equal to the said note. It may be that if J. W. Powell had paid in the amount of the judgment assigned and the question was, whether the proceeds should first go in discharge of Fetner's debt before application to the Fairfield debt, that this language of the assignment would require application first to the Fetner debt. But such a case is not presented. No payment has been made on the judgment assigned.

The foregoing conclusion practically disposes of all the exceptions in behalf of Mrs. Powell except the third and sixth.

The sixth exception alleges error in confirming the master's holding that the interest paid on the Symmers judgment to Patrick was not $535.17, but $377.12. This question does not appear material in view of the conclusion reached above, but if it should be deemed so, we see no good reason for disturbing the conclusion of the Circuit Court.

It is conceded by counsel for Patrick that the third exception requires us to correct the finding of the master, concurred in by the Circuit Court, that "Mrs. Powell was bound

to pay under Judge Klugh's decree the Fetner judgment, interest and costs, for her judgment against Powell was held by Fetner for that purpose." This was doubtless an inadvertence. It does not appear that any judgment was rendered against Mrs. Powell on her indorsement of the note assigned to Fetner and no demand is made for a personal liability by Mrs. Powell on that account.

The judgment of this Court is, that the decree of Judge Purdy and the decree of Judge Carey be modified in the particulars above mentioned and that said decrees be in all other respects affirmed, with instruction to the master to make the proper calculation of interest in accordance with this opinion and apply the proceeds of the judgment assigned by Mrs. Eliza J. Powell to T. G. Patrick on November 15, 1897, as far as may be necessary, to the payment of the debt mentioned in and secured by paragraph 3 of said assignment.