## 6717

### FRETWELL v. CARTER.

1. INDORSER—MAKER.—A PROMISSORY NOTE payable to order with name of payee left blank, signed and indorsed by others, delivered to another who indorses and before maturity negotiates to an innocent holder as collateral to his past obligation, by which he secures extension of time for payment of his past obligation, is a valid contract in the hands of such holder against the indorsers, whether they may be makers or indorsers, whether the payer of the note signed it or not, in absence of notice. Such holder by alleging execution and delivery to one as payee, in substance and effect fills in his name as payee.

2. CHATTEL MORTGAGES—PLACE OF SALE.—SEC. 3004, CODE 1902, providing that chattels seized by mortgagee shall be advertised for sale in the county where mortgagor resides, construed to mean that sale shall be made in the same county, but place of sale and requirements of the statute may be changed or waived in writing. *Held* in this case, in one mortgage mortgagor expressly authorized sale in another county, and in the other he gave the mortgagee the right to sell in another county and at private sale.

Before DANTZLER, J., Laurens, summer term, 1906. Reversed.

Action by Joseph J. Fretwell, survivor of Bleckley & Fretwell, against Ellen A Carter *et al.*

From judgment for defendant, plaintiff appeals.

*Messrs. Simpson, Cooper & Babb,* for appellant, cite: *What are the liabilities of the respective parties defendant to this action:* 1 Dan. on Neg. Inst., secs. 769, 717, 641, 669, 728; 4 Ency., 478. *Under the mortgages, the mortgagees had the right to sell the property in Anderson County:* Code, 1902, 3004; 28 S. C., 255. *Defendants are liable as indorsers:* 2 McC., 389; 2 Bail., 457; 5 Rich. L., 537. *Note blank as to payee is payable to bearer:* 3 McC., 482.

*Messrs. F. P. McGowan* and *Ferguson & Featherstone,* contra. *Mr. McGowan* cites: *Mrs. Carter denied signing*

*the notes. Her defense being separate, judgment as to her should stand:* Code of Proc., 157, sub. 3; Pom. Rem., sec. 140; *Hardin* v. *Trimmier,* 10 S. C. *Note with payee in blank may be considered as payable to some fictitious person:* 3 McC., 482; Story on Prom. Notes, sec. 37; 3 Rich., 133. *If notes were given holders for debts plea of failure of consideration by prayer is good:* 1 Dan. Neg. Inst., secs. 28, 99; Story Prom. Notes, sec. 190; Harp., 201; 1 Dan. Neg. Inst., secs. 174-6; 28 S. C., 148; 1 N. & McC., 133; Riley, 56. *If mortgagee sells property in a manner not authorized by statute or by mortgage, he extinguishes the debt:* 28 S. C., 257; 31 S. C., 161.

*Messrs. Ferguson & Featherstone* cite: *There must be a consideration to support an indorsement:* 1 Dan., sec. 679. *Wharton and McCravy are not liable as joint makers:* 37 S. C., 463; 41 S. C., 81. *Property should be sold in county where found unless mortgage provides otherwise:* Code, 1902, 3004; 31 S. C., 61; 73 S. C., 407; 41 S. C., 81; 4 Ency., 489; 2 McM., 313. *Is note with payee blank a promissory note?* 1 Dan., secs. 28, 145, 152, 175; 14 Ency. P. & P., 508; 7 Blackf., 57; 2 Tex., 232; 18 Ore., 202; 71 Mo., 580; 3 Sneed., 558; 3 Rich., 133; 1 McM., 76; 48 S. C., 308; 4 Ency., 112.

December 4, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, as sole survivor of Bleckley & Fretwell, brought this action to recover upon two promissory notes, each for $100.00, dated February 3, 1897, and payable, respectively, November 1 and November 15, 1897. The complaint alleged the execution and delivery of the notes by defendant Ellen A. Carter to Z. Carter, and that defendants George S. McCravy, J. H. Wharton and J. T. Crane, before the delivery of said notes and for the accommodation of Ellen A. Carter, indorsed said notes by writing their names across the back thereof,

and that thereafter, on February 28, 1897, the defendant Z. Carter also indorsed the same to Bleckley & Fretwell. The complaint also alleged due presentation for payment, protest for non-payment, and notice thereof. J. T. Crane made no answer. Zimri Carter, J. H. Wharton and George McCravy made answer with general denial and alleging payment. Ellen A. Carter answered, making general denial and alleging that if she signed the notes described it was for the accommodation of her husband, Zimri Carter, and was without consideration; and, further, that if such notes were given they were given for the debt of Zimri Carter, for which plaintiff held a chattel mortgage as collateral security, and the plaintiff either foreclosed, or should have foreclosed, said mortgage and applied the proceeds or the value of the property to the payment of the notes.

The notes introduced in evidence did not contain the name of any payee, and were in the form: "promise to pay...... or order," etc. The plaintiff offered evidence tending to show the signature of Ellen A. Carter as maker, the delivery by her of the notes to Zimri Carter, her husband, the signatures of defendants George S. McCravy, J. H. Wharton and J. T. Crane on the back of the notes, the subsequent possession of the notes by Zimri Carter; that, on February 27, 1897, Zimri Carter assigned and indorsed said notes to Bleckley & Fretwell, as collacteral to secure two other notes by Zimri Carter to them, one dated February 5, 1896, for $294.70, and the other dated August 27, 1897, for $70.00, which last mentioned notes were secured by mortgage of certain mules, wagon, buggy and harness; that in January, 1899, the mortgagee took these chattels under the mortgage from the possession of the mortgagor, at his residence in Laurens County, informing him that the property would be taken to Anderson and there sold according to law, and that the mortgagor said all right; that the property was sold at public auction at Anderson in February, 1899, after posting three advertisements in as many public places in the city of Anderson for five days before the sale;

that the wagon and harness were sold under the mortgage securing the $70.00 note to Mr. Campbell, for $21.50, and that sum was credited on said $70.00 note, which had been credited with $43.50 on February 14, 1898; that the other property seized, four mules and a buggy and harness, were sold and bid in by the mortgagee for $54.50, and the proceeds credited on the note and mortgage for $294.70; that the property bid in was in bad condition, and was afterward sold by Bleckley & Fretwell at private sale without any profit after adding expense of keep, the witness not being able to state the prices obtained; that no other payments had been made than the credits stated; that the notes in suit were duly protested for non-payment and notice thereof mailed the indorsers.

The testimony in behalf of defendants tended to show that while the signature resembled that of Ellen A. Carter, she didn't think she signed the note; that she never gave a note to her husband, Zimri Carter; that the indorsers McCravy and Wharton signed the notes across the back at the request of Zimri Carter, supposing they were indorsing for the accommodation of Ellen A. Carter, and that McCravy was to get a mortgage of some personal property to secure the indorsers; that J. T. Crane first indorsed the notes, then McCravy, then Wharton; that notes were delivered by Wharton to Zimri Carter; that the value of the property sold under mortgages was considerably in excess of the mortgage debts; that the mules were not old, and in fair condition, and worth an average of one hundred dollars each; that the $294.70 note and mortgage were given to secure the purchase price of two of the mules and the buggy; that in the latter part of 1897, McCravy, after receiving notice of protest on notes in suit, notified Bleckley to exhaust the collateral before going on the indorsers, and that Bleckley said that he need not be uneasy, that there was enough property to pay the debt. Bleckley, however, testified that he did not remember having had any such conversation.

The jury rendered a verdict in favor of the defendants.

The first and second exceptions complain of instructions to the jury, that it was incumbent upon the plaintiff to establish that Ellen A. Carter did execute and deliver the alleged notes before there could be any recovery.

It is considered that this instruction was erroneous, as it made recovery against any of the defendants depend upon whether Ellen A. Carter had signed the note. We think this point is well taken.

The notes were negotiable instruments. The fact that the name of the payee was left blank is not fatal. In 1 Dan. on Neg. Inst., sec. 599, it is stated: "The bill or note must point out with certainty the party who is to receive the money, that is, it must designate a payee. But the payee need not be named in person, it being sufficient if some one be indicated. Thus if the instrument be payable to A or bearer, or to bearer, or to holder, or to order, it is intended to mean whoever comes in lawful possession, and the holder may sue upon it." The case of *Davega* v. *Moore,* 3 McCord, 480, holds that a note payable "to order" only, without mentioning the name of any payee, is considered as a note payable to a fictitious person, and may be sued upon by any *bona fide* holder. It is not disputed that Crane, McCravy and Wharton at the request of Zimri Carter signed the notes by writing their names across the backs thereof and after signing handed them back to Zimri Carter. Even if it be conceded that Ellen A. Carter did not sign the notes, the other defendants signed them and put it in the power of Zimri Carter to do as he did, negotiate them to Bleckley & Fretwell.

There was nothing to show that Bleckley & Fretwell had notice of any infirmity in the notes. An indorsee who takes a promissory note before maturity and without notice of its infirmity as collateral security for a pre-existing indebtedness is a *bona fide* holder for value. *Bank* v. *Chambers,* 11 Rich., 657. The evidence also shows that Bleckley & Fretwell extended the time of the payment of the notes held by them in consideration of the transfer to them of these collateral notes. When Zimri Carter indorsed the notes of

Bleckley & Fretwell they were certainly authorized to fill in the blanks with his name. *Carson* v. *Hill & Jones,* 1 McM., 76; *Aiken* v. *Cathcart,* 3 Rich., 133; *Bank* v. *Mahon,* 75 S. C., 255. This they have elected to do and have done in substance and effect by alleging execution and delivery of the notes to him as payee. Under these circumstances, even if Ellen A. Carter did not sign the notes, Zimri Carter would be liable because of his negotiation and indorsement to plaintiff, and McCravy, Wharton and Crane would be liable whether they be regarded as indorsers or makers. If indorsers, their contract engages that the signature of the maker is genuine. *Ford* v. *Bank,* 74 S. C., 184. If makers, having issued the notes as genuine even though as sureties, when they contained what purported to be the signature of Ellen A. Carter, they are bound to a *bona fide* holder even though her signature be a forgery. 2 Dan. Neg. Inst., secs. 1314, 1354; *Helms* v. *Wayne Agricultural Co.,* 73 Ind., 325, 38 Am. Rep., 147; *Wheeler* v. *Traders Deposit Bank* (Ky.), 49 L. R. A., 315, and cases cited in note; *Meacher* v. *Fort,* 3 Hill, 228; *Witte* v. *Williams,* 8 S. C., 290.

The Court instructed the jury that if the sale of the mortgaged property was made outside of the county where the mortgagor resided and where the property was found, and if the said property at the time of the sale was worth as much as the debt, the verdict should be for the defendants, unless the mortgagor consented to the sale being so made. It is contended that this was erroneous, as the provisions of the statute, sec. 3004, Civil Code, were waived by the terms of the mortgages, the $70 mortgage authorizing a "public or private sale for cash, with or without advertisement, at Anderson, S. C.," and the larger mortgage authorizing sale "at will or pleasure, by private or public sale, with or without advertisement, * * * In case of advertisement for sale the same shall be done by posting for five days in three or more public places."

While section 3004 does not in express terms provide the place of sale, the fair implication is that the place of sale

should be in the county in which the statute requires the advertisement to be made, as it would largely destroy the purpose of local advertising if the sale should take place in a wholly different county. The place of sale, like the requirement of the statute as to the manner and place of advertising, may be changed or waived in writing. *Darnell & Susong* v. *Darlington,* 28 S. C., 256, 5 S. E., 620.

We think the terms of the mortgages are sufficiently broad to authorize a sale of the mortgaged property in Anderson County. One of the mortgages expressly so provides and the other allows the mortgagee to sell "at will or pleasure, by private or public sale, with or without advertisement." It could hardly be doubted that the mortgagee was authorized to make private sale in Anderson County if he so willed, and the permission to make public sale is as broad. That such was the intention of the parties is rendered all the more natural and reasonable when it is considered that the plaintiff's place of business was in Anderson County, the papers were executed in that county and notes were made payable at the Bank of Anderson. The instruction given was not in conflict with the foregoing.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.