FIRST NATIONAL BANK v. ANDERSON & CO.

1. A negotiable instrument in the hands of a *bona fide* endorsee before due is presumed to have been given for valuable consideration ; and possession is ordinarily *prima facie* evidence that the endorsee received it in good faith for value before maturity.
2. Where an endorsee sues on a note and proves its transfer for value before due, the burden is on defendant to prove that plaintiff had *notice*

of a failure in the consideration of the note—mere suspicion will not do.

3. Notice to a stockholder of a corporation or to a former officer thereof, is not notice to the corporation.

4. Declarations of a person not shown to have been the agent or attorney of the party against whom offered (although afterwards he was such attorney) are inadmissible in evidence.

Before ALDRICH, J., York, November, 1886.

To the statement of the case made in the opinion it will be proper only to add the following letters :

ROCK ISLAND, ILL., March 16, 1885.

*J. G. Anderson & Co., Rock Hill, S. C.:*

DEAR SIR : Yours of 13th inst. received and in reply will say the $1000 note due April 1st must be paid when due, that being done, the other one for $400, can stand a while longer.    If the $1000 is not paid when due, both will be put in the hands of an attorney for collection without delay.    I have not the option of keeping the estate of B. D. Buford & Co. open for an indefinite time, so that must be closed.    The fact that the notes draw interest does not help the matter, it is the principal that I must have.    If you want any indulgence on the $400, you must pay the one due April 1st.    Yours respectfully,

J. M. BUFORD, Assignee.

ROCK ISLAND, ILL., March 16th, 1885.

*Messrs. J. G. Anderson & Co., Rock Hill, South Carolina :*

GENTLEMEN : Your letter directed to J. M. Buford, Assignee, stating that you could not pay your notes I read on its receipt. You evidently care nothing about the situation the assignee is placed in : he has no right to extend paper at discretion ; on the contrary, he has given bond to close those old matters up, and you might as well make up your minds to pay those notes, for if you do not pay them at once, or a large part of them, suit will certainly be brought against you.    The assignee has to close up the affairs of the old company.    The old company sent those notes against you to a lawyer, with instructions to have the matter secured, but instead of doing that he simply gave you an extension without doing us any good, and now the notes remain unpaid as before.    I do not suppose that you care to be sued, and certainly the assignee does not want to sue you, but you are very much mistaken if you expect to let these matters run until you feel in the humor of paying them.    I suppose that if you

would pay half the amount you owe by the 1st of April, you would get two or three months extension on the balance, but if you are not going to pay any, you had better prepare yourselves for suit.
                         Yours truly,
                                        B. D. BUFORD.

P. S. The shipment of old goods you returned to us received a few days ago and credited on account.

*Mr. G. W. Gage*, for appellant.

*Mr. W. B. Wilson, jr.*, contra.

February 27, 1888.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   On July 1, 1884, the defendants executed a note, of which this is a copy : "$1000.   Nine months after date, for value received, we promise to pay B. D. Buford & Co., of Rock Island, Illinois, or order, the sum of one thousand dollars, with interest from date.   Rock Hill, S. C., July 1, 1884. (Signed)   John G. Anderson & Co."   Endorsed as follows: (1) "B. D. Buford & Co., by J. M. Buford, assignee. (2) Rock Island Plow Company.   P. L. Mitchell, president.   (3) Pay J. M. Ivy and Co., or order, for collection for First National Bank, Rock Island, Illinois. (Signed)   Geo. M. Loosely, cashier."

The complaint alleged the endorsement of the note by J. M. Buford, assignee of B. D. Buford & Co., and the discount of the same by the plaintiff bank in good faith before maturity, on February 9, 1885, for value, and the plaintiff's ownership thereof. The defendants answered that the consideration of the note was agricultural instruments, which were warranted by B. D. Buford & Co. to be suitable for the cultivation of corn and cotton, for which they proved wholly unfit ; that before the commencement of the suit they offered to return the instruments, but the offer was declined, and the defendants thereby damaged fifteen hundred dollars ; and "that if the plaintiff ever became the owner and holder of said note, it became such after notice of the defence and claim of set-off; and that the note had not been transferred to plaintiff in good faith upon good consideration before due," &c.

The cause came on for trial before Judge Aldrich and a jury.

10

James M. Buford testified that he, as the assignee of B. D. Buford & Co., sold the note in suit at public auction, and it was purchased by the second endorsers, "The Rock Island Plow Company." P. L. Mitchell, president, and George M. Loosely, cashier of the bank (the plaintiff), testified that afterwards, on February 9, 1885, the bank in the usual course of business, discounted the note for value, in good faith and that the plaintiff had no knowledge of any defence to the debt. It appeared that "The First National Bank of Rock Island, Illinois," the corporation of "B. D. Buford & Co.," and that of "The Rock Island Plow Company" were closely connected in business; that P. L. Mitchell was president both of the "Bank" and of the "Plow Company," and also a stockholder in "B. D. Buford & Co.;" that James M. Buford, the assignee of B. D. Buford & Co., was one of the stockholders and original corporators of the bank, of which he was cashier up to December, 1884, and that he was also a stockholder both in B. D. Buford & Co. and the "Plow Company," and of the latter, treasurer.

The defendants offered in evidence two letters to them, one from B. D. Buford and the other from J. M. Buford, as assignee, bearing date March 16, 1885 (after the time of the alleged transfer to the bank), which seemed to be in reply to a letter from defendants of date a few days previous. These letters are in the Brief, and simply urged that the note should be paid promptly at maturity or it would be sued. That of B. D. Buford commenced, "Your letter directed to J. M. Buford, assignee, stating that you could not pay the note," &c.; and that of J. M. Buford, assignee, contained this sentence: "If the $1000 note is not paid when due, both will be put in the hands of an attorney for collection without delay. I have not the option of keeping the estate of B. D. Buford & Co. open for an indefinite time, so that must be closed up." Neither of the letters made any allusion to the transfer of the note or the defence of failure of consideration on the part of the defendants.

One of the defendants was allowed (against objection by plaintiff's attorney) to testify as to the declarations of John P. Gage, a lawyer, whom it seems the assignee, J. M. Buford, had employed to collect another note of the defendants for $500. It

did not appear that Mr. Gage was the attorney or agent of the bank or had been employed to collect the $1000 note. When he called on one of the defendants concerning the $500 note, the inquiry was made of him, "What about the $1000 note? We have an off-set to it." This defendant was also allowed (against objection) to state that at the time the note was given for agricultural implements there was a general understanding that such of the implements as did not give satisfaction to the farmers should be exchanged for others; that they did not prove "satisfactory," but B. D. Buford & Co. refused to take them back or exchange them, and that there was an entire failure of consideration.

The judge charged as follows: "You have two questions to determine. The first is, who is the real owner of the note? If you decide that the National Bank of Rock Island is not the real owner of the note, you will be for the defendants. The note was due on April 1, 1885; had the bank received that note as a *bona fide* buyer before that time? If so, then the plaintiff is entitled to a verdict. If you find that such is the case, your verdict will be for the note and interest," &c. Under the charge the jury found for the defendants, and the plaintiffs appeal to this court upon the following exceptions:

1. Because the presiding judge, on the trial of the cause, admitted evidence by the defendants tending to prove a failure of consideration between the payers and payees of the note sued on, as against the plaintiff, a *bona fide* holder, before there was any evidence fixing notice of such or of any defence on the plaintiff.

2. Because the presiding judge ruled that whether or not the plaintiff had any notice of the defence of failure of consideration, was in the first place a question for the determination of the jury; when the court should have decided whether any notice had been brought home to the plaintiff, before admitting to the jury evidence of a failure of consideration between the original parties to the note.

3. Because the judge admitted the testimony of Iredell Jones, in so far as it referred to the declarations of John P. Gage, when there was no evidence that Gage was the agent of the plaintiff or a party to the suit.

4. Because the judge admitted the testimony of Iredell Jones

(one of the defendants) in so far as it related to a contract between the payers and payees of the note, that the payers should receive back the goods (consideration of the note) if they were not satisfactory.

5. Because the presiding judge erred in refusing to set aside the verdict and grant a new trial, when there was no evidence to support the verdict.

A negotiable instrument is presumed to have been given for valuable consideration, and if endorsed before due and *bona fide,* the endorsee may recover it against the persons originally liable, although the endorser has a defective title or none at all.   So, if B steals a bill and transfers it to C for value, and without notice of the theft, C may enforce it against the parties liable on it, although B had in fact no title to transfer.   2 *R. & L. Law Dict.,* title "Negotiable."   Ordinarily possession of such a note or bill is *prima facie* evidence to sustain the allegation that the note was assigned and delivered to him by the original payee ; and it is unnecessary to prove that he gave a valuable consideration for it, unless it appear that the note was lost, stolen, or otherwise forcibly or fraudulently obtained from the original owner.   *Story Prom. Notes,* § 196 ; *Jackson* v. *Heath,* 1 *Bail.,* 355; *Schaub* v. *Clark,* 1 *Strob.,* 299 (47 *A. D.,* 554).   In the case from Strobhart it was ruled "that the holder of a bill or note is ordinarily presumed to be a holder for value, and is not to be put to proof of it until the consideration (of the transfer) has been attacked."

The note sued on in this case was a negotiable instrument payable to B. D. Buford & Co. or order.   Was it transferred before due to the bank, the plaintiff?   It (the bank) did not rest merely on the presumption arising from the possession of the note, but offered proof of transfer in the regular commercial manner.   The different endorsements in blank appeared upon the note itself, and besides J. M. Buford, the assignee of the payee, B. D. Buford & Co., testified that he sold the note *bona fide* and for value to the "Rock Island Plow Company;" and both the president and cashier of the bank testified that afterwards, viz., on February 9, 1885, (before it was due) the note was discounted by the bank in the usual course of business for value and without notice

of any defence against it.   This would seem to establish with sufficient certainty the fact of the transfer, notwithstanding the letters from the two Bufords after the transfer; for these letters did not in any way contradict the alleged transfer, nor, as it seems to us, did they contain anything necessarily inconsistent with it.   B. D. Buford & Co. were the payees and first endorsers—liable as such in case the makers did not pay.   The defendants knew that they had made an assignment and wrote to the assignee, who replied simply urging payment.

Assuming that the transfer was proved, the *onus* of showing that it was made with notice of a defence and therefore *mala fide* was upon the defendants.   Suspicion of defect in a bill or note will not defeat the holder's title, bad faith on the part of the holder must be proved.   *Witte* v. *Williams*, 8 *S. C.*, 302. Evidence of a failure of the consideration does not throw upon the holder the proof of his *bona fides*.   *Daniel Neg. Inst.*, §§ 769, 770.   There was no direct proof that the bank, at the time it discounted the note, had any notice of the defence of failure of consideration; but, on the contrary, all the direct proof was the other way.

It was, however, earnestly contended that the jury had so found, and that the circumstances alone afforded sufficient evidence to support the finding.   It was urged that the bank, the Plow Company, and that of B. D. Buford & Co., were located very near each other, and that their business was so closely connected—the same persons to a large extent controlling all of them—that they could be regarded as substantially one concern, that notice to one was notice to all, and that therefore the note sued on might be regarded as still in fact the property of the payees, B. D. Buford & Co., although for the purpose of avoiding the defence set up, they sued it in the name of the bank.   So far as mere notice is concerned, it may possibly be that there might have been some force in the suggestion, if it had appeared, that clear and explicit notice had been given before the note was discounted by the bank.   But it was not shown that any such notice had been given to any of the parties; and we cannot consider the inference sought to be raised from the close connection of the parties as alone sufficient to overthrow the positive proof

of the entire want of notice at that time, and that the note was discounted for value and *bona fide.*

We therefore think that, as against the bank, it was error to admit parol evidence of a collateral agreement between the original parties when the note was given, and also of a failure of the consideration of the note.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded to the Circuit Court for a new trial.

MR. CHIEF JUSTICE SIMPSON. I concur in the result, on the ground of the admission of the declarations of Gage, which I think were incompetent.

MR. JUSTICE MCIVER concurred in the result in a separate opinion as follows: I concur in the conclusion reached by Mr. Justice McGowan in this case. It seems to me that there was absolutely no testimony impeaching the *bona fides* of the transfer of the note to the bank, and therefore any testimony as to the failure of the consideration of the note was clearly incompetent. The bank, not relying alone upon the presumptions arising from its possession of this negotiable note, offered direct testimony to the effect that the note was transferred for value before it was due, without any notice or suspicion of any defect therein, in the usual course of business. The fact that the president of the bank was a stockholder in the corporation known as B. D. Buford & Co., as well as in the Rock Island Plow Company, and the further fact that J. M. Buford was one of the stockholders in the bank, and had been, several months before the note was discounted by the bank, the cashier thereof, was certainly no evidence to fix upon the bank notice of the various dealings which B. D. Buford & Co. may have had with all or any of its customers. When a bank is applied to, to discount commercial paper, it certainly never was supposed that it must be assumed to know all that each and every one of its stockholders may happen to know in regard to such paper. Such an assumption would involve the necessity of consulting every one of its stockholders before any commercial paper could be safely discounted, and that would very seriously

impair, if it would not entirely destroy, the peculiar value of such paper, and strike a fatal blow at the commercial interests of the country.

So, too, the fact that the president of the bank was a stockholder in the concern of B. D. Buford & Co., affords no evidence whatever that he knew all the details of the business of such corporation. On the contrary, the very theory upon which the business of a corporation is conducted negatives the idea that the stockholders know all the details of the business at the time such business is transacted. That is necessarily entrusted to the officers and agents of the corporation, and the stockholders are not supposed to know anything about the management and conduct of the business of the corporation, except as reported to them by their officers or agents. The fact that one who is a stockholder in a corporation should therefore be presumed to know the details of the various business transactions in which such corporation may engage, would indeed be a startling proposition, and very seriously unsettle the security which is universally supposed to attend all dealings in commercial paper. Nor does the fact that J. M. Buford had been at one time cashier of the bank afford any evidence whatever that the bank had notice of the facts known to Buford in regard to this note. He had ceased to hold the office of cashier on the 19th of December, 1884, and the note was discounted by the bank on the 9th of February, 1885, several months afterwards, and surely the bank could not be affected by any notice that its former officer may have had. It seems to me that there was not the slightest evidence of any want of good faith in the purchase of the note by the bank, or of any notice to it before its transfer of any defect in the consideration, and therefore that the Circuit Judge erred in receiving evidence tending to show a failure of the consideration of the note.

It seems to me also that there was error in admitting the declarations of John P. Gage, Esq., for there was not the slightest testimony that he was at the time either the agent or the attorney of the bank. The fact, admitted at the hearing, though not incorporated in the "Case," that the present action was commenced by Mr. John P. Gage in June, 1885, was certainly no proof that he was the attorney of the plaintiff in April, 1885, when

these declarations appear to have been made. Until it was shown that he was the attorney or agent of the plaintiff at the time the declarations were made, his declarations, like those of any other third person, would be incompetent.

I agree, therefore, that the judgment below should be reversed and the case remanded for a new trial.