8223

### CITIZENS TRUST AND SAVINGS BANK v. STACKHOUSE.

1. NEGOTIABLE INSTRUMENTS.—To defeat the right of a *bona fide* holder for value of commercial paper something more is required than proof of facts and circumstances which merely give rise to suspicion or which may be sufficient to put a prudent man on inquiry. There must be proof of actual notice or knowledge of the defect in the title or bad faith on the part of the holder at the time he purchased the paper.

2. IBID.—BURDEN OF PROOF.—In a case where it is shown a negotiable note had its inception in fraud or was stolen from the maker, the burden of proof is on the holder to show that he obtained the note in due course of business and without notice of any such defect.

3. IBID.—ISSUES.—Where the evidence as to notice of defective title is evenly balanced, or very close, or there is no evidence of good faith than that of the holder himself, the issue of good faith should go to the jury unless only one inference could be reasonably deduced from the facts and circumstances.

4. IBID.—FRAUD.—That the holder of a negotiable note had had twenty or forty suits on notes discounted by it from the same payee as the one in question; that all the notes were known by the indorsee to have been given for horses; that the suits had been contested on the ground that the horses were not satisfactory; that the notes were discounted a short while before maturity while the payee had a considerable balance to his credit with no show of reason for their being discounted, and the proceeds taken away, while the payee habitually deposited with the indorsee; that notice of fraud in the inception of the note was given the home banks of the makers with request to notify all inquirers; that such notice was published in their home newspaper, and that the note was offered to a home banker before such notice at a price much less than discounted by indorsee, should not carry the issue of notice to indorsee of fraud in the inception of the note to the jury.

5. REHEARING refused.

Before SEASE, J., Marion, Fall term, 1910. 'Affirmed.

Action by Citizens Trust and Savings Bank against J. Stackhouse & Son *et al.* Defendants appeal. This case was first argued on 28th April, 1911, but was ordered reargued on April 22, 1912.

*Mr. W. F. Stackhouse,* for appellants.

*Mr. J. W. Johnson,* contra, cites: *What defendant must show to let in defense of failure of consideration against indorsee of negotiable note:* 8 S. C. 470; 14 S. C. 142; 28 S. C. 148; 81 S. C. 541; 87 S. C. 76.

The opinion in this case was filed on May 23, 1912, but held up on petition for rehearing until

May 30, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. Plaintiff brought this action on one of three promissory notes given by defendants to McLaughlin Brothers, of Columbus, Ohio, in payment for a stallion, alleging that it bought the note for value before maturity. The defendants set up the defenses of failure of consideration, breach of warranty, fraud and misrepresentation in the sale of the horse, and allege that plaintiff is not the *bona fide* owner of the note sued on, but that it is acting in collusion with the payees thereof to defeat their defenses, under the pretense of being the *bona fide* purchaser for value without notice. The note was for $1,399, bears date December 21, 1906, and was due thirteen months after date. Plaintiff proved by its vice president and cashier that it bought the note (with eleven others) from McLaughlin Brothers on December 6, 1907, and paid them for it $1,333.11; that the money was paid by a cashier's check, and it was not deposited to the credit of McLaughlin Brothers in the plaintiff bank, although they were depositors of that bank, and had been since 1890, and for the past several years their deposit account ran from $5,000 to $15,000. He said that neither he nor the plaintiff bank had notice of any defense to the note; that he knew the business of McLaughlin Brothers, and that they dealt in horses and imported French Coach Stallions, and he supposed the note sued on was one of a series of notes given in payment for a horse, as the McLaughlin Brothers usually took their notes in that way; that he had discounted many such notes for them during the past seventeen years; that formerly, when they were not so strong financially as they are now, he made inquiry as to the solvency of the makers of such notes, but for the past ten years he had made no such inquiry, because he considered McLaughlin Brothers financially able to protect their endorsements; that the bank had

had litigation in the collection of some twenty—or probably forty—of the notes discounted for McLaughlin Brothers—the usual defense being that the horse was not satisfactory; that McLaughlin Brothers had always protected the bank, and when it had had litigation and had paid attorneys' fees in the collection of notes indorsed to the bank by them, they reimbursed the bank, and plaintiff would look to them for like protection in this case; however, the plaintiff had no claim upon them, except as indorsers of the note. This testimony was brought out in the examination—direct and cross—of plaintiff's witness.

The defendants offered in evidence a copy of *The Marion Star*, issued September 4, 1907, in which was published a notice warning people not to trade for the notes given by defendants to McLaughlin Brothers, giving the ground of defense. They also offered a letter, dated June 26, 1907, from McLaughlin Brothers to the cashier of a bank at Mullins, in Marion county, in which they offered to sell the defendants' notes, aggregating $4,400, for $3,700. They also offered to prove that they had notified all the banks in Marion of the fraud in the inception of these notes, and asked the banks to extend the notice to all persons who might inquire about them. They also offered to prove the defenses, set up in their answer, to wit, failure of consideration, breach of warranty, and fraud and misrepresentation in the sale of the horse. The Court excluded the testimony so offered, because there was no evidence that plaintiff had notice of any of the facts or defenses sought to be proved, when it purchased the note; and on the ground that there was no evidence tending to show bad faith on the part of the plaintiff in the transaction; and, thereupon, the Court directed a verdict for the plaintiff for the amount sued for.

It is to be regretted that the defendants cannot be permitted to prove their defenses, for, according to the allegations of their answer, the note which they are now called

upon to pay was obtained from them by fraud and misrepresentation. But it is of vastly more importance to the commerce of the country that the integrity and unassailability of negotiable paper, in the hands of *bona fide* holders for value, shall be maintained by the Courts than that persons who carelessly put their names to such paper shall be relieved of liability thereon. In *Swift* v. *Tyson,* 16 Pet. 1, 10 L. Ed. 865, the Supreme Court of the United States, by Mr. Justice Story, said: "There is no doubt that a *bona fide* holder of a negotiable instrument for a valuable consideration, without any notice of facts which impeach its validity as between the antecedent parties, if he takes it under an indorsement made before the same becomes due, holds the title unaffected by those facts, and may recover thereon, although as between the antecedent parties the transaction may be without any legal validity. This is a doctrine so long and so well established, and so essential to the security of negotiable paper, that it is laid up among the fundamentals of the law, and requires no authority or reasoning to be now brought in its support. As little doubt is there, that the holder of any negotiable paper, before it is due, is not bound to prove that he is a *bona fide* holder for a valuable consideration, without notice; for the law will presume that in the absence of all rebutting proofs, and, therefore, it is incumbent upon the defendant to establish by way of defense satisfactory proofs of the contrary, and thus to overcome the *prima facie* title of the plaintiff." In *Murray* v. *Lardner,* 2 Wall. 110, 17 L. Ed. 857, Mr. Justice Swayne, speaking for the Court, said: "The possession of such paper carries the title with it to the holder. 'The possession and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the

mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this Court, and we feel no disposition to depart from it. The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and wilful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud there can be no question. The circumstances mentioned, and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or circumstantial evidence, is fatal to the title of the holder. The rule laid down in the class of cases of which *Gill* v. *Cubitt* is the antetype, is hard to comprehend and difficult to apply. One innocent holder may be more or less suspicious under similar circumstances at one time than at another, and the same remark applies to prudent men. One prudent man may also suspect where another would not, and the standard of the jury may be higher or lower than that of other men equally prudent in the management of their affairs. The rule established by the other line of decisions has the advantage of greater clearness and directness. A careful Judge may readily so submit a case under it to the jury that they can hardly fail to reach the right conclusion. We are well aware of the importance of the principle involved in this inquiry. These securities are found in the channels of commerce everywhere, and their volume is constantly increasing. They represent a large part of the wealth of the commercial world. The interest of the community at large in the subject is deep-rooted and wide-branching. It ramifies in every direction, and its fruits enter daily into the affairs of persons in all conditions of life. While Courts should be careful not so to shape or apply the rule as to invite aggres-

sion or give an easy triumph to fraud, they should not forget the considerations of equal importance which lie in the other direction."

This Court has announced in numerous cases that, to defeat the rights of a *bona fide* holder for value of commercial paper, something more is required than proof of facts and circumstances which merely give rise to suspicion, or which may be sufficient to put a prudent person on inquiry. There must be proof of actual notice or knowledge of the defect in title, or bad faith on the part of the holder at the time he purchased the paper. Of course, actual notice and bad faith may be shown by circumstantial as well as by direct evidence. *McCaskill* v. *Ballard,* 8 Rich. 470; *Witte* v. *Williams,* 8 S. C. 290; *Bond Debt Cases,* 12 S. C. 272; *Walker* v. *Key,* 14 S. C. 142; *Hand* v. *R. Co.,* 17 S. C. 256; *Bank* v. *Anderson,* 28 S. C. 149, 5 S. E. 343; *Ehrlich* v. *Jennings,* 78 S. C. 273, 58 S. E. 922; *Fretwell* v. *Carter,* 78 S. C. 531, 59 S. E. 639.

No point was made either here or on Circuit as to where lies the burden of proof in a case like this, where it is shown by defendants that the note had its inception in fraud. The defendants seem to have voluntarily assumed the burden of proof. While the authorities elsewhere are not entirely in accord, our own cases and the greater weight of authority in other jurisdictions agree that when the defendant shows fraud or illegality in the inception of the paper, or that it was lost by or stolen from the owner, the presumption which is raised by its mere possession is overcome, and the burden then shifts to the holder to show that he acquired it in good faith, for value, before maturity, in the usual course of business, and under circumstances creating no presumption that he knew of the fraud or other defect in title. *Schaub* v. *Clark,* 1 Strobh. 301; *Witte* v. *Williams, supra; Bank* v. *Anderson, supra;* see note in 11 Am. St. R., page 324; *Canajoharie Nat. Bank* v. *Diefendorf* (N. Y.), 10 L. R. A. 676, and note; *Com-*

*mercial Bank* v. *Burgwyn* (N. C.), 17 L. R. A. 326, and note. The application of this rule can make no difference, however, in the decision of this case; but it might be of some consequence in a case where the evidence is very close, or evenly balanced; or in a case where there is no evidence of good faith, except that of the holder himself, and the question arises whether his evidence shall be received as true. In such a case, if there is anything, either in the facts and circumstances, appearing in evidence or any direct evidence tending to impeach the witness, the Court would submit the issue to the jury; but if there is no evidence, direct or circumstantial, tending to impeach the witness, the Court would do as it did in this case—direct the verdict, instead of inviting a verdict based upon caprice or prejudice by submitting an issue to the jury when there really is none in the evidence. Courts are organized to do justice, and they should not even impliedly sanction a verdict, which is not supported by evidence, by submitting an issue to a jury when only one reasonable inference can be drawn from the evidence. Therefore, the defendants' attorney very properly concedes that, if there was nothing in the evidence from which a reasonable inference could have been drawn of bad faith on the part of plaintiff in the purchase of the note, the verdict was rightly directed.

He zealously contends, however, that the circumstances brought out in the testimony of plaintiff's witness do warrant such an inference. All the facts and circumstances relied on by counsel, as susceptible of such a conclusion, were set out in the statement at the beginning of this opinion. We have carefully considered them, but we find nothing in them, either singly or collectively, which tends to show bad faith on the part of the plaintiff. The fact most strongly relied upon is that the plaintiff has had some twenty, probably forty, suits in collecting notes discounted for McLaughlin Brothers—the usual defense being that the horse was not satisfactory.

It does not appear, however, what was the result in those cases. It may be that plaintiff won each of them, and that the defenses were wholly without merit. Moreover, it does not appear why the horses were not satisfactory. The dissatisfaction may have been caused by something which would not have suggested to the mind of any one that there had been fraud or misrepresentation in the sale of the horses. Now, if it had appeared that in each case, or in a good number of them, the charge of misrepresentation and fraud was made and proved, then it might, with some show of reason, be contended that plaintiff should have suspected that there may have been fraud and misrepresentation in the sale of the horse to defendants. But we have seen that proof of facts and circumstances which merely create suspicion, or which would put a prudent person on inquiry, is not sufficient. To be sure, the holder of negotiable paper must not be allowed to wilfully shut his eyes to the truth, for, as said by Mr. Justice Swayne in *Murray* v. *Lardner, supra,* wilful ignorance is as bad as guilty knowledge, and both involve the result of bad faith. But certainly the mere fact that plaintiff had litigation in collecting some twenty, or probably forty, of the many notes which it had discounted in the run of seventeen years' business with the McLaughlin Brothers as its depositors does not tend to show bad faith in discounting the note here sued on.

Judgment affirmed.

MESSRS. JUSTICES WOODS *and* WATTS *concur in this opinion.*

MR. CHIEF JUSTICE GARY, *dissenting.* I will not delay the filing of the opinion by discussing, at length, the question whether the plaintiff was a *bona fide* holder of the note. The mere recital in the opinion of the fact, "that the bank had had litigation in the collection of some twenty, or

probably forty, of the notes discounted for McLaughlin Brothers—the usual defense being that the horse was not satisfactory"—was, in itself, sufficient, at least to put the plaintiff on notice, that there was a good defense to the note, but which was heretofore not considered on the merits, on the ground that the plaintiff was a *bona fide* holder.

Furthermore, the fact that the purchase of the note was made just before it was due and long after its execution, thus enabling the payee to avoid valid defenses; the fact that sale was made by men who habitually kept large deposits with the purchaser and who did not appear to have been forced to sell for any legitimate purpose; the fact that the purchase money of the note was immediately taken out of the reach of the purchaser, although the seller habitually deposited with the buyer, are circumstances, taken together, that amount to more than a suspicion, and should have carried the case to the jury, as there was testimony tending to show that the transaction originated in fraud.

MR. JUSTICE HYDRICK *concurs in this opinion.*

Petition for rehearing refused by formal order filed May 30, 1912.