### 11451

### FARR-BARNES LUMBER CO. v. TOWN OF ST. GEORGE

#### (112 S. E., 24)

1. BILLS AND NOTES—TRANSFER OF NOTE TO BANK FOR COLLECTION AND APPLICATION TO TRANSFEROR'S NOTES HELD "NEGOTIATION"; "FOR VALUE"; "GOOD FAITH AND FOR VALUE."—Where payee endorsed a note in blank and delivered it to a bank for collection and application to payee's notes held by the bank, the transfer was a "negotiation" to the bank within Civ. Code, 1922, § 3681, and the bank took the note "in good faith and for value" within Section 3703, stating the requirements of a holder in due course.

2. BILLS AND NOTES—TITLE TO NOTE INDORSED IN BLANK PASSES BY DELIVERY.—The title to a note indorsed in blank by payee passes by delivery.

3. BANKS AND BANKING—BANK HAS LIEN ON PAPER INDORSED FOR COLLECTION.—Where one who deposits paper with a bank for collection is indebted to the bank, the bank has a lien on the paper and the proceeds thereof for the amount of such indebtedness.

4. Bills and Notes—Actual Notice of Defect or Bad Faith Necessary to Defeat Claim of Bona Fide Holder.—There must be proof of actual notice of a defect in title or bad faith on the part of holder at the time he purchases the paper to defeat his claim as *bona fide* holder.

5. Bills and Notes—Antecedent or Preexisting Debt is "Value."—Under Civ. Code, 1922, § 3676, an antecedent or preëxisting debt owed by transferor to transferee at the time of the transfer renders the transaction a transfer for value.

6. Bills and Notes—Taking Note as Collateral Security Held for Value.—Under Civ. Code, 1922, § 3678, where one takes a note of a third person as collateral security for a precedent indebtedness, he is a holder for value.

7. Bills and Notes—Party Receiving Note From Holder in Due Course Has All Rights of Such a Holder.—Under Civ. Code, 1922, § 3709, where plaintiff's transferor was a holder in due course, plaintiff has all the rights of such a holder, provided it was not a party to any fraud or illegality affecting the instrument.

8. Bills and Notes—Transferee From Holder in Due Course Not Affected by Fact That He Did Not Pay Value or Knew of Defects.—Transferee of a holder in due course is not affected by the fact that he did not pay value, or that the instrument was overdue at the time of the transfer, or that he had notice or knowledge of infirmities in the paper.

9. Sales—Subpurchaser Has No Right of Action Against Original Seller for Breach of Warranty.—A subpurchaser has no right of action based on breach of warranty by the original seller.

Before Memminger, J., Dorchester, October, 1922.   Affirmed.

Action by Farr-Barnes Lumber Co. against Town of St. George.   Judgment for plaintiff and defendant appeals.

*Mr. R. Lon Weeks,* for appellant, cites: *Error to exclude testimony as to want or failure of consideration in the note in controversy:* 3 Code 1922, Sec. 3710; 109 S. C., 294; 113 S. C., 140; 117 S. C., 140; 3 R. C. L., 148. *Respondent not holder of note in due course:* 3 R. C. L., 43–182, 260, 258, 253, 126; 2 Speers L., 344; 2 Speers L., 436.

*Mr. Legare Walker,* for respondent, cites: *Where holder has a lien upon the instrument he is deemed holder for*

*value to the extent of his lien:* 3 Code 1922, Sec. 3678; 110 S. C., 99; 110 S. C., 271; 121 S. C., 437; Crawford's Ann. Neg. Inst., 113, 114. *Holder in due course:* 3 Code 1922 Sec. 3703. *Court had discretion to regulate order in which testimony should be adduced:* 91 S. C., 455; 105 S. C., 100; 98 S. C., 220; 100 S. C., 353; 101 S. C., 144; 101 S. C., 207; 102 S. C., 19; 103 S. C., 340; 103 S. C., 174; 104 S. C., 350; 110 S. C., 268; 115 S.C., 381; 119 S. C., 39.

March 4, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

Action by the transferee of a promissory note against the maker. The trial Court directed a verdict for the plaintiff. The defendant's appeal turns upon the question of whether there was error in the Court's ruling that upon the evidence presented the plaintiff was a holder of the note in due course, against whom the defenses interposed by the defendant were not available.

The note was made by he defendant, the Town of St. George, to one L. S. Traxler on August 12, 1920, and in form and tenor is as follows:

"November 15, after date for value received we promise to pay to the order of L. S. Traxler seven hundred and seventy-five and no/100 dollars negotiable and payable at ———— with interest at the rate of 8 per cent. per annum. In case of suit or collection by attorney, I also agree to pay 10 per cent. attorney's commissions."

The note was indorsed in blank by the payee, L. S. Traxler, and delivered to the Bank of St. George, with instructions to collect and apply the proceeds upon two notes of the said Traxler to the plaintiff, Farr-Barnes Lumber Company, in the amount of $1,400, which had been "discounted" by the bank and were then held by the bank in that capacity. These notes so held by the bank had been given by

Traxler to the plaintiff lumber company in part.payment of the purchase price of a steam engine and boiler, were secured by a chattel mortgage of this machinery attached to the notes, and carried the indorsement of the Farr-Barnes Lumber Company. The notes and mortgage were dated February 12, 1920, and the maturity date was subsequent to November 15, 1920. The note here in suit was given by the defendant Town to Traxler, in payment of the purchase price of the boiler, which Traxler had bought from the Lumber Company six months before and for which he had given the notes and chattel mortgage then held by the bank. Shortly after the Town purchased the boiler from Traxler, the Lumber Company learned of the sale and that the Town's note for the purchase price had been placed with the bank. There was no formal release of the chattel mortgage on the boiler, but both the bank and the Lumber Company appear to have acquiesced in Traxler's action and to have tacitly accepted and treated the Town's note as a substitute for the mortgage on the boiler. The Town's note to Traxler, indorsed by him in blank, was delivered to the bank before maturity and without notice of any infirmity in the note. It was not credited by the bank upon Traxler's discounted notes to the Lumber Company, but was held for "collection and as additional security" to those notes. At maturity of the Town's note to Traxler, the bank presented the note for payment, and payment was refused. The bank continued to hold the note. Thereafter the Traxler notes to the Lumber Company, discounted and held by the bank, fell due. They were not paid by Traxler, but were subsequently paid by the Lumber Company as indorser. The collateral, consisting of the chattel mortgage and the note of the Town to Traxler, indorsed in blank by Traxler, was thereupon delivered by the bank to the Lumber Company. Upon the Town's note to Traxler, thus acquired by it, the Lumber Company brought this action.

The Town, by its answer, alleged: (1) That the plaintiff acquired the note "after its maturity and not in due course"; (2) that the note was made and delivered to the payee, Traxler, in consideration of an express warranty of quality of the boiler, for the purchase price of which the note was given, and upon the condition that, if the boiler was found within a reasonable time not to be as represented, the note would "be canceled and delivered to the defendant," and that both the warranty and the executory agreement had been breached; and (3) that the plaintiff knew "shortly after defendant's examination of said boiler," and long before its acquirement of said note, that said boiler at the time of its purchase by defendant "was worthless and of no value and that defendant received no consideration for said note."

The plaintiff, having introduced in evidence the note in its possession, did not rest its case upon the *prma facie* showing thus made, but introduced other evidence directed to establishing the manner, time, and good faith of its acquirement of the note. The defendant offered evidence to establish failure of consideration and breach of the payee's agreement to cancel and deliver the note. The presiding Judge ruled, in substance, that evidence directed to establishing those defenses would not be received until the defendant had introduced sufficient evidence tending to establish that the plaintiff was not a holder in due course to require submission of that issue to the jury. In so ruling, we think the trial Court committed no error. For the purposes of the trial Court in passing upon the evidence, the facts, the excluded evidence would have tended to establish were, in effect, assumed as proved. In no view could the defendant have been prejudiced. The ruling is in accord with that made by the trial Court in *Bank v. Stackhouse,* 91 S. C., 455; 74 S. E., 977; 40 L. R. A. (N. S.), 454, and upheld by this Court for the reasons therein stated. See *Farmers' & Mechanics' Bank v. Whitehead,* 105 S. C.,

100; 89 S. E., 657, and *Bank v. Crawford,* 103 S. C., 340; 88 S. E., 13.

The pivotal question is whether, under the facts, the Court was correct in holding as a matter of law that the plaintiff was a holder in due course. Section 52 of the Negotiable Instrument Act (Section 3703, Vol. 3, Code 1922) defines a "holder in due course" as one—

"who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Section 57 of the Act (Section 3708, Vol. 3, Code 1922) provides that—

"A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves," etc.

Section 58 of the Act (Section 3709, Code 1922) provides that—

"A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to the latter."

Applying the foregoing provisions of the statute to the facts, did the Bank of St. George become a holder of this note in due course? That the note was (1) "complete and regular upon its face," (2) that the bank came into possession of it "before it was overdue and without notice that it had been previously dishonored," and (3) that at the time it was delivered to the bank it had "no notice of

any infirmity in the instrument or defect in the title," of Traxler, the payee, who indorsed and delivered it, is not open to question and seems not to be disputed. The position of appellant is that the note was not negotiated to the bank and that the bank did not become a holder in due course because it did not take the note "in good faith and for value." The test of the validity of that position lies in the answer to the inquiry: What were the bank's legal rights in and to the note upon and after its delivery by Traxler to the bank?

The undisputed facts are that the note was indorsed 2, 3 in blank by the payee, Traxler. The title of the note thereupon passed by delivery to the bank (7 C. J., 599, § 246), subject only to such limitation as may be implied from the instruction to the bank to collect the note and apply upon a specified indebtedness of Traxler. That indebtedness was then owed to and owned by the bank. The undisputed fact is that the bank had "discounted" the Traxler notes to the Lumber Company upon which the Town's note was to be applied. There is no suggestion in the evidence that the term "discounted," as used by witnesses in this connection, was employed in a sense other than that the bank had acquired the notes for value, was a holder thereof in due course, and had a right to hold either Traxler as maker, or the Lumber Company as indorser, for the payment thereof, at maturity. "Where one who deposits paper with a bank for collection is indebted to the bank, the bank has a lien on the paper and the proceeds thereof for the amount of such indebtedness." 7 C. J., 613; 3 R. C. L., 585, § 215. There was no express or implied agreement here that would prevent the attachment of the bank's lien. On the contrary, the express agreement was that the Town's note deposited by Traxler with the bank was for collection and application to Traxler's notes then held by the bank. That the bank in that case by implication of law acquired a lien on the town note for the

purpose of protecting the payment of Traxler's notes then held by it would not seem open to question. 3 R. C. L., 584, § 214. That such was the understanding of the bank is indicated by the statement, several times repeated, of the defendant's witness, the cashier of the bank, that the Town's note was received for collection and "as collateral," as "additional security," to the notes of Traxler to the Lumber Company, which had been discounted and were then held by the bank. The handling of the town note by the bank was consistent throughout with the retention of its lien thereon and with the assertion of its claim to the paper as collateral security for Traxler's outstanding debt. When payment was declined by the Town, the note was not returned to Traxler, but was retained and delivered in ordinary course of business to the Lumber Company upon payment by it as indorser of Traxler's notes.

In the situation thus made by the undisputed facts, we have no doubt that there was a "negotiation" and that the bank took the Town's note to Traxler "in good faith and for value." The transfer of the note by indorsement and delivery to the bank was a "negotiation" within the express terms of Section 30 of the Negotiable Instrument Act (Section 3681, Code 1922). The bank, as transferee held "in good faith and for value." As to the bank's "good faith" in taking the note there is not the slightest evidence, direct or circumstantial, tending to establish that it acquired the paper otherwise than in entire good faith. As was said in *Bank v. Stackhouse*, 91 S. C., 461; 74 S. E., 979; 40 L. R. A. (N. S.), 454:

"This Court has announced in numerous cases that to defeat the rights of a *bona fide* holder for value of commercial paper, something more is required than proof of facts and circumstances which merely give rise to suspicion, or which may be sufficient to put a prudent person on inquiry. There must be proof of actual notice or knowl-

edge of the defect in title, or bad faith on the part of the holder at the time he purchased the paper."

See decisions there cited, and the later cases of *Commerce Trust Co. v. Grimes,* 98 S. C., 220; 82 S. E., 420. *Edens v. Gibson,* 100 S. C., 353; 84 S. E., 1005. *Laney v. Gregory,* 101 S. C., 144; 86 S. E., 3. *Iowa City State Bank v. Hoefer,* 101 S. C., 207; 85 S. E., 406. *Barrett & Company v. Still,* 102 S. C., 19; 86 S. E., 204. *Bank v. Crawford,* 103 S. C., 340; 88 S. E., 13. *Bank v. Given,* 103 S. C., 174; 87 S. E., 998. *Harrison v. Crosby,* 104 S. C., 350; 88 S. E., 1102. *Barry v. Gregory,* 110 S. C., 268; 96 S. E., 371. *Enterprise Bank v. Lyles,* 115 S. C., 381; 105 S. E., 896. *Bank v. Breedin,* 119 S. C., 39; 111 S. E., 799.

Here it does not appear that the bank had notice 5, 6 of the consideration of the note or of any of the contractual conditions upon which it is alleged to have been given, nor of other facts sufficient even to put a prudent person upon inquiry. As to whether the bank acquired the instrument "for value," the "antecedent or pre-existing debt," owed by the transferor to the transferee at the time of the transfer (the Traxler notes discounted and held by the bank), was sufficient to constitute value within the express provisions of Section 25 of the Negotiable Instrument Act (Section 3676, Code 1922). By the terms of Section 27 of that Act (Section 3678, Code 1922), it is provided:

"Where the holder has a lien on the instrument, arising either from contract or by implication of law, he is deemed a holder for value to the extent of his lien."

That provision, read in connection with Section 25, is but a statutory expression of what was the settled law of this jurisdiction prior to the enactment of the statute—that one who takes the promissory note of a third person as collateral security for a precedent indebtedness is a *"bona fide* holder for value." *Bank of Charleston v. Cham-*

76   Farr-Barnes Lumber. Co. *v.* Town of St. George

Opinion                                    [128 S. C.

*bers,* 11 Rich., 657.   *Dearman v. Trimmier,* 26 S. C., 511; 2 S. E., 501.   *Fretwell v. Carter,* 78 S. C., 531, 535; 59 S. E., 639.   *Union National Bank of Columbia v. Cook,* 110 S. C., 99; 96 S. E., 484.   See Crawford's Annotated Negotiable Instruments Law, p. 63.   Since there was clearly a compliance with the condition as to *bona fide* holding for value, no room for doubt remains that the bank acquired this note as a holder in due course.

If the bank was a holder in due course, then the plaintiff here, deriving its title from the bank, a holder in due course, has all the righs of such former holder in respect to prior parties to the instrument, provided it was not itself a party to "any fraud or illegality affecting the instrument."   Section 58, Negotiable Instruments Law (Section 3709, Code 1922).   That the delivery of the note, duly indorsed in blank to the plaintiff upon its payment of the Traxler notes to the bank, was a transfer to the plaintiff of the bank's property rights in the town note, is not open to question.   That at the time of this transfer the bank could have enforced this note free from the restrictions of any equities and defenses existing between the maker and the payee, and that it would have done so, if it had not otherwise been able to obtain payment of its debt, there can be no doubt.   As a part of its property right in the note, the bank could transfer it free from such restrictions even to one who had notice of infirmities in the instrument.   8 C. J., 466, § 685; 3 R. C. L., 1036, § 242.

"The rights thus acquired by the transferee are not affected by the fact that he did not pay value, or that the instrument was overdue at the time of the transfer, or that he had notice or knowledge of infirmities in the paper."   3 R. C. L., 1036, § 242.

Since the defenses here interposed, viz.: failure of consideration grounded upon breach of an express warranty and of the executory parol agreement made by the payee of the note, were not available as against

the bank, they were not available against the plaintiff as transferee of the bank's title, unless the plaintiff was itself a "party to fraud or illegality affecting the instrument." In no aspect of the facts do we perceive how they may be held to support an inference that the plaintiff was guilty of "any fraud or illegality affecting" the Town's note to Traxler. Even as against Traxler, the payee, it is not charged that there was fraud or illegality in the inception or procurement of the paper, or even that the making of the special warranty by Traxler embraced the elements of actionable fraud. He, it is alleged, in substance, warranted the condition of a boiler incased in brick and mortar—the defective condition of which was, and presumably could be, disclosed only by the subsequent tearing away of the casing by the purchaser. In that situation, Traxler's representations at the time as to the condition of the boiler and as to returning the note in a certain future contingency were entirely consistent with good faith and honest intent. There was not only no agreement on Traxler's part not to negotiate the note given him, but the note by its express terms was made "negotiable." Even if the evidential facts would support an inference that Traxler, the payee, was "a party to fraud or illegality affecting the instrument," in the sense those terms are used in the statute, upon what theory of fact under the law merchant can such fraud be imputed to the plaintiff, a transferee from a holder in due course? The theory that because the plaintiff was the seller of the boiler to Traxler, and that because the boiler six or more months after that sale, upon being taken out of its brick incasement, was found by the Town to be worthless for its purposes, an inference might be indulged that the plaintiff was guilty of such fraud in selling the boiler to Traxler as would taint the note taken by Traxler upon his resale to the Town, would seem to be patently untenable. Whether there was a warranty of the quality of the boiler sold by the plaintiff to Traxler, and whether there was in fact a breach of that warranty, does

not appear.   Certainly fraud of the plaintiff in that regard may not be presumed or implied.   If such facts did appear, they would give the Town as a subpurchaser no right of action against the plaintiff as the original seller. *Mauldin v. Milford* (S. C.), 121 S. E., 547, recently filed.   In no view, therefore, do either the allegations of the answer or the evidential facts warrant the inference that the plaintiff as transferee of this note from a holder in due course, was a "party to any fraud or illegality affecting the instrument" which would deprive it of the rights of such former holder with respect to the enforcement of the note free from the defenses here interposed.

If the plaintiff in this action sold Traxler a worthless boiler under warranty, its liability is to Traxler or to the assignee of his right of action as warrantee in an appropriate action to establish that liability.   If the Town saw fit to purchase that boiler under a warranty from Traxler and to pay him in paper, the title to which would pass by indorsement and delivery as completely and irrevocably as the title to the legal tender currency passes by delivery, it took substantially the same risk it would have taken if it had paid Traxler in money—the risk of having to rely upon the seller's parol contract and his ability to respond in damages for a breach thereof.   If the Town's obligation to pay was conditional, it could have so nominated in a written contract which would not have been negotiable.   In which connection, the observation of Mr. Justice Watts in *Bank v. Crawford,* 103 S. C., at page 342; 88 S. E., 13, seems peculiarly pertinent that—

"It does seem hard to satisfy good business men of the danger of giving negotiable notes unless they fully intend to pay that particular note."

The judgment of the Circuit Court is affirmed.

Messrs. Justices Watts and Cothran concur.

Mr. Chief Justice Gary did not participate.

MR. JUSTICE FRASER: I dissent. It seems to me that there was a question for the jury, to wit: Did the plaintiff acquire title to the note before maturity?