### 11907

### NATIONAL BANK OF COMMERCE OF NORFOLK v. MUNN

(131 S. E., 432)

MORTGAGES—ASSIGNEE OF NOTE AND MORTGAGE BEFORE MATURITY FOR VALUE HELD ENTITLED TO RECOVER, NOTWITHSTANDING ALLEGED BREACH OF AGREEMENT BY ASSIGNOR.—Assignee of note and mortgage, purchased before maturity for value without notice, *held* entitled to recover, notwithstanding alleged breach of agreement by assignor to release certain cotton and allow certain credits upon the execution and delivery of note and mortgage.

Before FEATHERSTONE, J., Darlington, November, 1924. Affirmed.

Action by the National Bank of Commerce of Norfolk against Marie R. Munn. From a judgment for plaintiff, defendant appeals.

The decree of the trial Court follows:

This matter comes on for hearing before me at Darlington, S. C., on November 13, 1924, upon the testimony in the cause taken by Julius S. McInnes, Esq., to whom the cause was referred to take and report the said testimony.

The complaint is in the usual form for the foreclosure of note and mortgage alleged to have been purchased by the

plaintiff for value, before maturity. In the answer it is denied that the plaintiff is the owner and holder of the papers in due course for value; that the note and mortgage were executed upon condition to be performed by the mortgagee, which it failed to perform; that the plaintiff had knowledge of the conditions upon which the execution and delivery of the papers took place, and was not entitled to a foreclosure until the conditions had been performed and until a certain credit of $300 had been allowed. No testimony as to the last-mentioned credit is offered.

The testimony offered by the plaintiff is to the effect that the note and mortgage were purchased for value, before maturity without notice of any equities, and the testimony offered on behalf of the defendant (objected to by plaintiff) was to the effect that the papers were executed upon the condition that certain cotton, which the original mortgagee had attached, would be released. The questions made are as follows: First. Was the paper taken by the plaintiff subject to equities existing between the original parties? and, second, if so, were such conditions fulfilled?

As to the first point, the defendant contends that, because the note, which was in the usual form, bore notation, "Secured by real estate mortgage," it did not possess the quality of negotiability, and when transferred was not freed from equities existing in favor of the mortgagor. It does not occur to me that the negotiability of the note was affected by this indorsement which is customary for the identification of notes thus secured. While a mortgage does not of itself possess the quality of negotiability, when it is given to secure a negotiable obligation and is transferred before maturity, it is free from equities which existed between the original parties. 19 R. C. L., 356.

I, therefore, conclude that defendant's first position is untenable. But, if this were not so, the only reasonable inference from the testimony is that the condition upon which the note and mortgage were given was performed. The

plaintiff took by deposition the testimony of E. L. Field, vice president of Eastern Hide & By-Products Company, and the defendant, upon the plaintiff's failure to do so, offered this testimony in evidence. Attached thereto is a letter from Barrett & Co., in whose possession the cotton had been attached, dated September 26, 1922, to the effect that the attachment was released, and it is to be inferred that the defendant had notice thereof from the fact that she introduced in evidence a letter of Eastern Hide & By-Products Company to her attorney, of date September 25, 1922, with which was purported to have been sent a copy of letter to Barrett & Co., to which Barrett & Co.'s letter of September 26th, referred to, was a reply. That the attachment was released there is direct, undisputed testimony. As to whether the defendant knew of it, the testimony is not conclusive. In any event, by due diligence she should have ascertained the fact. The second position above mentioned is, therefore, untenable.

It is therefore ordered, adjudged, and decreed that the plaintiff have judgment against the defendant for $3,100.16, the amount found by me to be due upon the note and mortgage, and including the sum of $281.83 which I find to be a reasonable fee for plaintiff's attorneys.

It is further ordered, adjudged, and decreed that the mortgaged premises described in the complaint be sold by the Judge of Probate, acting as master, in front of the courthouse at Darlington, S. C., to the highest bidder for cash on sales day in January, 1925, or on any subsequent sales day during the usual hours for public sales; that the master do give the usual legal public notice of the time, place, and terms of said sale.

It is further ordered, adjudged, and decreed that in the event the successful bidder at said sale shall fail to promptly comply with his bid, the said master is hereby authorized to resell said premises on the same day without further ad-

vertisement or on any subsequent sales day after due advertisement without the further order of this Court.

It is further ordered, adjudged, and decreed that the said Judge of Probate, acting as master, do execute and deliver to the successful bidder at such sale a good and sufficient deed conveying the said premises, and that the purchaser at said sale be put into possession of the said premises by the sheriff of Darlington County forthwith.

It is further ordered, adjudged, and decreed that out of the proceeds of said sale the master do pay the costs and expenses of this action and of said sale, any taxes that may constitute a lien upon the premises, and the amount found to be due upon the plaintiff's mortgage, including attorneys' fees, with interest thereon at 7 per cent. per annum from November 13, 1924.

It is further ordered, adjudged, and decreed that the defendant and any and all persons claiming by, through, or under him be, and they are hereby, forever barred and foreclosed of all right, title, interest, and equity of redemption in and to the mortgaged premises.

*Messrs. Miller & Lawson*, for appellant, cite: *Note and mortgage of even date to be construed together:* 126 S. C., 261; 126 S. C., 225; 8 C. J., 199. *Mortgage securing notes, is taken subject to equities:* 1 Joyce's Defenses to Commercial Paper, 747. *Foreclosure suit governed by equity rules:* 26 S. C., 506. *Assignee of chose in action takes subject to, equities:* 60 S. C., 216. *Bank does not become holder for value by simply discounting note:* 7 C. J., 718; 3 R. C. L., 609; Crawford's Annotated N. I. L., 62. *Negotiability of note affected by non-negotiability of mortgage securing it:* 86 S. C., 170; 32 L. R. A. (N. S.), 862.

*Messrs. Willcox & Hardee,* for respondent, cite: *Negotiability of note not affected by collateral securing it:* 19 R. C. L., 346; 8 C. J., 127; 18 S. C., 282; 47 S. C., 209; Civ. Code, 1922, Sec. 3656. *Mortgage securing note passes*

*free of equities as does the note:*  97 S. C., 136.  *Burden on appellant to show finding of trial Judge not supported by evidence:*  117 S. C., 536; 105 S. C., 201; 105 S. C., 60; 92 S. C., 501; 91 S. C., 473.  *Bank a bona fide holder:*  119 S. C., 39.  *Where one of two innocent parties must suffer from fraud of another the one guilty of greater negligence must suffer:*  92 S. C., 336.  *The face of a note is its passport:*  8 C. J., 742.  *Burden of showing bank not a bona fide holder:*  87 S. C., 76; 77 S. C., 39; 28 S. C., 143; 8 C. J., 980.  *"Discounted note" defined:*  3 Words and Phrases, 2092; 57 N. Y. S., 674; 104 U. S., 271; 26 L. Ed., 742.  *Party taking by endorsement a note not due as collateral for pre-existing debt is not bound by equities:*  78 S. C., 531; 26 S. C., 506; 11 Rich., 675.

January 28, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of Judge Featherstone. His decree will be reported for a proper understanding of the case.  The exceptions, seven in number, challenge the correctness of his Honor's rulings.

The appellant's counsel at the hearing conceded that, if the note and mortgage involved in the suit were not indivisible, the position of the appellant was untenable.

The note and mortgage are divisible and not indivisible. The evidence satisfies us that the note came into possession of the respondent before maturity for value and without notice.  The purchase of the note carried with it the mortgage.

The testimony of the bank officers is uncontradicted. They were not cross-examined.  Their evidence shows that the note was purchased before maturity for value and without notice, and that the bank innocently holds the same.

All exceptions are overruled, and judgment affirmed.

MR. JUSTICE COTHRAN and MESSRS. ACTING ASSOCIATE JUSTICES J. H. MARION and R. O. PURDY concur in result.

Mr. Chief Justice Gary did not participate.

Mr. Justice Cothran: I concur in the result of Mr. Justice Watts' opinion in this case, but for the reason that the case involves some interesting questions of commercial law, not discussed in the leading opinion, I shall express my views upon them.

The action is to foreclose a mortgage of real estate executed by the defendant on April 15, 1922, securing a note dated on that day, payable to the order of Eastern Hide & By-Products Company, on November 15, 1922, for $2,-792.14, with interest from date at 6 per cent., with 10 per cent. attorneys' fees.

The plaintiff bank claims to be a holder in due course of the note and mortgage by indorsement from the payee on September 15, 1922, before the maturity of the note on November 15, 1922.

The defendant admits the execution and delivery of the note and mortgage, but sets up the defense that they were executed and delivered "upon condition that said Eastern Hide & By-Products Company should release certain cotton and allow certain credits, which the company then and there promised to do"; that without such agreement they would not have been executed and delivered; "that, after securing the execution and delivery of the papers aforesaid, the said Eastern Hide & By-Products Company falsely and fraudulently repudiated its said obligation and covenant, and entirely failed and refused to procure the release of said cotton or to allow any credits whatsoever"; that as a consequence, neither the company nor its assignee has the right to assert any right or interest by virtue of said note and mortgage.

It appears that, prior to the execution of the note and mortgage, the defendant had given to the Eastern Company a bill of sale of certain cotton (the number of bales does not appear in the record for appeal); that this cotton had been shipped by the defendant to Barrett & Co., of Augusta, Ga.; that the bill of sale was being held by the Eastern Company

as security for the debt then due by the defendant to it, amounting to $2,545.06. There is a very indefinite reference in the evidence to an attachment by the Eastern Company of this cotton. The vice president of the Eastern Company testified:

"In order to save Mr. and Mrs. Munn from criminal prosecution by the Eastern Company, we agreed to waive criminal rights by their giving in substitution for the bill of sale on this cotton a mortgage on the property and Mr. E. C. Dennis drew the deed of trust and the note, and delivered it to us in settlement of all rights that we might have by reason of our bill of sale covering the cotton, and we then executed a release deed and notified Barrett & Company to release the cotton."

It appears that, although the note and mortgage were executed on April 15, 1922, this notification to Barrett & Co. was not transmitted until September 25, 1922.

Judge Dennis in his testimony, says:

"I got up that note and mortgage and sent it in to them and they were to accept that note and mortgage in lieu of all other securities of whatever kind they had."

In the letter of the Eastern Company of March 27, 1922, proposing to accept note and mortgage, they say:

"We agree that as soon as this bond and mortgage goes to record to release the cotton in order that he can get what fertilizer he needs without cash."

Judge Dennis further says: "Representing the Munns and at the request of the By-Products Company, I got up that note and mortgage," which obviously was in consequence of and in line with the letter of the By-Products Company dated March 27th.

It seems to me, therefore, that there was an utter failure to establish the contention of the defendant that the note and mortgage were executed and delivered upon condition that the cotton was to be first released. The agreement to release the cotton was collateral to the execution of the note and

mortgage, the validity of which was not affected by the breach, if there was a breach, of the collateral agreement; and, if the defendant had any remedy at all on account of said breach, it could only have been resorted to in this action by a set-off or counterclaim to the action upon the note and mortgage.

In this view of the case, in the absence of a plea of set-off or of a counterclaim for damages on account of the breach of the condition or collateral agreement, and in the absence of any evidence tending to show any damages sustained by the defendant on that account, I do not consider it material to determine whether or not the note and mortgage, or the note with the mortgage as an accessory to it, were or was to be considered as possessing the attribute of commercial negotiability.

I must, however, record my dissent to the statement that under the circumstances of this case the note and mortgage were divisible; by which statement I understand it to be declared that, regardless of any provision in the mortgage, the negotiability of the note is to be determined solely by its terms.

My understanding of the law is that, where a note and mortgage are simultaneously (practically) executed as parts of a single transaction, they are to be read and construed together, and every part of each is to be given effect if possibly reconcilable (8 C. J., 199. *Bewley-Darst Co. v. Gin Co.*, 126 S. C., 225; 119 S. E., 589), and that the question whether a provision in a mortgage which is not contained in the note shall be deemed to have affected the negotiability of the note, otherwise negotiable, depends upon whether that provision simply relates to the security rather than to the indebtedness; that, if the terms of that provision in the mortgage are such as to make the note uncertain or conditional as to amount, time of payment, or the like, they render the note nonnegotiable. 8 C. J., 201. Whether there are any provisions in the mortgage which render the note nonnegotiable, I do not deem it necessary to consider.

I do not think that the position of the appellant can be sustained that the burden of proof was upon the bank to show that it had paid out the proceeds of the discount of the note to the Eastern Company. The law places the burden upon the other party upon its appearing that the indorsee is in possession of the note; the presumption being that he is a holder in due course. 8 C. J., 981. *Bank v. Stackhouse,* 91 S. C., 455; 74 S. E., 977; 40 L. R. A. (N. S.), 454, and numerous South Carolina cases both before and since.

It is the settled law of this State that the holder in due course of a negotiable note, secured by a mortgage, is entitled to foreclose the mortgage, and is protected in doing so by the commercial and not the equity rule, as is explained in *Dearman v. Trimmier,* 26 S. C., 506; 2 S. E., 501. 19 R. C. L., 356.

Besides this, the Circuit Judge has found as a fact that the collateral agreement to release the cotton has been performed by the mortgagee. There is abundant evidence to sustain this conclusion.

I think, therefore, for the reasons stated above, the judgment of the Circuit Court should be affirmed.

Mr. Acting Associate Justice J. H. Marion concurs.